Kilbourne, Jenkins, & Co. v. Jennings & Co. and·Metcalf.

KILBOURNE, JENKINS & Co. v. JENNINGS & Co. AND METCALF.

38 533
88 233
38 533
98 169
38 533
112 124

1. **Lien:** CONTRACT: CONSTRUCTION. In an action against the owner of real estate by one who has furnished materials for the erection of a building thereon, the owner, if guiltless of misrepresentation, is not liable beyond the terms of his·contract with the builder. Under an .agreement to pay in real estate, he cannot be required to pay in money.

2. **Evidence:** EXPERT. A painter cannot testify as an expert in regard to the workmanship exhibited in the framing and construction of a building.

*Appeal from Pottawattamie Circuit Court.*

TUESDAY, JUNE 16.

THE plaintiffs commenced this action to recover of the defendants, Jennings & Co., sometimes called Jennings & Boydston, and composed of J. M. Jennings and D. R. Boydston, the sum of $653.21, and interest, on account of lumber furnished them, and to establish and foreclose a lien therefor, as against the defendant Metcalf, upon lot 7, in block 1, in Bayliss' 2d Addition to Council Bluffs, and the dwelling thereon, in the erection of which the said lumber was used.

The defendant, Metcalf, answered and filed a cross-petition claiming damages of Jennings & Co. for the alleged unworkmanlike erection of the building.

Jennings & Co. made default to the claim of plaintiffs. They answered the cross-petition of defendant, Metcalf, denying the alleged breach of contract in the erection of the building, and filed a cross-petition, claiming a balance of $1,600 due them on their contract, for which they ask judgment.

The jury returned both a general and a special verdict. In their general verdict they find for the plaintiffs against Jennings & Co., and against Metcalf the sum of $794.73; and in favor of Jennings & Co., against Metcalf the sum $1,569.50.

Motion for new trial overruled. Judgment upon the verdict. The defendant Metcalf appeals. The material facts are stated in the opinion.

*Clinton, Hart & Brewer*, for Metcalf, appellant.

*Ross & Dailey*, for Kilbourne, Jenkins & Co., appellees.

*Montgomery & James*, for Jennings & Co., appellees.

DAY, J.—I. We do not deem it necessary to discuss and determine, *seriatim*, the numerous errors assigned and relied on by appellant. The principal question in the case grows out the following facts, respecting some of which there is no conflict in the evidence, and others of which are determined by the special findings of the jury, to-wit:

In the month of May, 1869, Jennings & Co. entered into a written contract with the defendant, Metcalf, for the erection of a dwelling house, fence and privy, and the digging of a well upon lot seven, in block one, in Bayliss' 2d Addition to Council Bluffs. The whole work was to be completed by the first of July next succeeding. They were to receive for the whole of said work and the material employed $1,800. Of this sum Metcalf was to pay $200, when the well, fence, and privy were finished, and the remaining $1,600, when the contract was fully completed, free from all liens, $800 in cash, and the remaining $800 by lot number five in block number four, in Stutsman's first Addition to Council Bluffs, which lot was to be conveyed to Jennings & Co. by J. H. Burroughs, who, about the time of making the contract, sold the same to Metcalf. The house was finished about the fifth day of August, 1869.

Plaintiffs furnished the lumber used in its construction, amounting to $653.21.

Jennings & Co. did extra work amounting to $40, and Metcalf was damaged by bad workmanship in the sum of $350. Payment of the $200 was made as agreed. Before the house was completed, to-wit: in May, 1869, J. H. Burroughs, pursuant to the request of Jennings & Co., and with the assent of Metcalf, delivered to Jennings & Co. the key to the house on said lot in Stutsman's Addition, and placed them in possession.

Jennings and Co. afterward sold said premises to J. H. Huff, and received pay for the same. .

On the 19th day of July, 1869, plaintiff's account for lumber used in the erection of the house, was certified as correct by Jennings & Co., and on or about the same day it was served on Metcalf, with a view to establishing a lien therefor.

In their general verdict the jury ignored entirely the agreement that the lot in question was to pay $800 of the contract price, and held Metcalf liable for $800 in money, with interest from the 19th day of July, 1869, a time anterior to the completion of the building. And this, notwithstanding the facts that Jennings & Co. were placed in possession of the lot long before they were entitled to it under the contract; that they have ever since held possession through their grantee, Huff; and the avowed readiness and willingness of Metcalf to execute a conveyance of said lot for the benefit of Jennings & Co., and their creditors.

Metcalf is not in default for not causing a conveyance to be executed to Jennings & Co. They were not entitled to such conveyance until they completed the work. Before they completed it, notice of plaintiff's lien was served. Afterward they could not safely change the status of the parties existing when notice of the lien was served. That the contract could not thus, without any default on the part of the defendant Metcalf, be changed, and that he could not thus be made liable to pay in money with interest, what it was agreed should be paid in property, does not, we think, admit of serious question.

It seems to us that the general verdict for Jennings & Co., in view of the facts upon which there is no conflict, and of those specially found by the jury, is wrong.

The general verdict in favor of plaintiffs against Metcalf, is sought to be sustained upon the ground that plaintiffs were induced by the statements of Metcalf to file and rely upon their lien against him.

1. LIEN: contract: construction.

This claim is based upon the following special findings:

" Did the defendant Metcalf, prior to the service of the settlement on him, make any statements and declarations to the

plaintiffs, in substance that he held the title to the said lot 5, block 4, in Stutsman's first addition to the city of Council Bluffs, Iowa, and that said house and lot should not be conveyed to Jennings & Co., until the sub-contractor's liens were all paid? Answer. Yes."

"Did the defendant Metcalf, prior to the service of the settlement on him, state to the plaintiffs in substance, that he had in his hands the sum of $800, unpaid on his contract with Jennings & Co., and that no part of the same should be paid to Jennings & Co., until all the sub-contractor's claims were paid? Answer. Yes."

"Were the plaintiffs induced by any statements and admissions of Metcalf, as to his retention of the money and property coming to Jennings & Co. on the contract, to serve the settlement on Metcalf, and to rely upon their sub-contractor's lien? Answer. Yes."

These findings are based upon the following evidence of T. Kilbourn, one of the plaintiffs: "Previous to filing our lien I had a conversation with Metcalf. I presented an order for $500 which Jennings & Co. had given us on him; he said he was not to pay until the house was finished, and of course would not accept the order; he said he had offered to settle with Jennings & Co., at the contract price, and allow them to within $35.00 of their claim for extra work. * * * He told me before I filed my lien, that Jennings & Boydston should not have a title to that lot until every claim against the house was paid."

Conceding that this evidence justifies the special findings, it is clear that the statements and admissions referred to in the last finding, are those mentioned in the first two, for there is no evidence from which it could be found that any other statements or admissions were made.

Now these statements are literally true, for it appears in other of the special findings that Metcalf paid only $200.00 on the contract, and that he had not conveyed the lot in question to Jennings & Co. If then, the plaintiffs because of these statements, were induced to serve the settlement on Metcalf, and to rely upon their sub-contractor's lien, they were not

misled. Besides it does not appear that, by relying on their lien, they abandoned or lost the benefits of any other means of satisfaction.

It does not appear that Metcalf, has done anything since he was served with notice of the plaintiff's claim, to change the existing relations of the plaintiff's claim. We are unable, therefore, to discover any legal principle which will make him liable to plaintiffs in kind or degree, different from his liability to Jennings & Co. If the purchaser Huff, has not acquired an equity in the lot in question, which is superior to plaintiff's claim, the lot may, by the proper proceedings be made available to plaintiff. If Huff did acquire a superior equity, before notice of plaintiff's lien was served on Metcalf, Metcalf should not, because of that fact, be subjected to double payment. If upon the other hand, Metcalf, since notice of the lien, has so conducted himself as to give Huff an equity superior to plaintiff's demand, he should be made liable for plaintiff's claim. Upon the evidence, however, and under the facts specially found, the judgment against him, for all of plaintiff's claim against Jennings & Co., is wrong.

The court should have set aside the general verdict.

II. One other question is presented which should be determined, as it may arise on the re-trial. One Henry Faul was produced as a witness and testified as follows:

"I am acquainted with the residence of the defendant Metcalf, I am a painter by trade, and did the painting on his house. I painted it inside and out, with two coats of good white paint, pure lead and boiled oil. I have worked at painting twenty years. My experience as a painter has enabled me to judge of the quality and character of carpenter work and material."

2. EVIDENCE: expert.

The witness then testified as an expert, respecting the workmanlike manner in which the carpenter and joiner work was done. The defendant, Metcalf, objected to the testimony on the ground that the witness had not shown himself competent to testify as an expert.

The objection, we think, should have been sustained. A painter, in virtue of the special knowledge and skill acquired

in his employment of painting, could learn nothing of the proper mode of framing together materials for the construction of a building.

Whatever knowledge he acquires respecting carpenter and joiner work, must be gained from mere observation and attention. But any observant man, whose attention has been specially directed to buildings in process of erection and erected, could have equal means of knowledge, and could be equally qualified to give an opinion. But the opinion of a witness is not to be received merely because he has had some experience, or greater opportunity of observation than others, unless the experience relates to matters of skill and science. *Robertson v. Stark*, 15 N. H., 109; *Page v. Parker*, 40 N. H., 47, and cases cited. It it true the witness in question could tell whether a joint was a close or an open one. And any observant person, without special instruction or skill could do as much. But is is apparent that, to admit as an expert, every person who had availed himself of an opportunity to observe a structure, and who had acquired a knowledge as to the closeness of the joints, would overturn entirely the rule respecting expert testimony. In *Walker v. Fields*, 28 Geo., 237, it was held that a miller cannot testify as an expert, with regard to the skilfulness displayed in the work on the mill.

REVERSED.