143 So. 454

## ROAN v. STATE.

### 7 Div. 135.

Supreme Court of Alabama.
June 9, 1932.

Rehearing Denied Oct. 13, 1932.

See, also, 24 Ala. App. 517, 137 So. 320.

Haralson & Son, C. A. Wolfes, and C. J. Scott, all of Fort Payne, and J. A. Lusk, of Guntersville, for appellant.

430

Thos. E. Knight, Jr., Atty. Gen., for the State.

THOMAS, J.:

Defendant was indicted, tried, and convicted of murder in the first degree, and his punishment fixed "at life imprisonment."

It is of statutory requirement that when any person stands indicted for a capital felony, "the court must, on the first day of the term, or as soon as practicable thereafter, make an order commanding the sheriff to

summon not less than fifty nor more than one hundred persons, including those drawn on the regular juries for the week set for the trial of the case, and shall then in open court draw from the jury box the number of names required, with the regular jurors drawn for the week, set for the trial, to make the number named in the order, and shall cause an order to be issued to the sheriff to summon all persons therein named to appear in court on the day set for the trial of the defendant, and must cause a list of the names of all the jurors drawn for the week in which the trial is set, and those drawn as provided in this section, together with a copy of the indictment, to be forthwith served on the defendant, by the sheriff." Section 8644, Code.

■ It has been declared that the terms of this statute are mandatory (Morris v. State, 146 Ala. 66, 41 So. 274), and failure of the record to affirmatively show a compliance therewith necessitates a reversal. Howard v. State, 160 Ala. 6, 49 So. 755; Burton v. State, 115 Ala. 1, 22 So. 585, 587; Bankhead v. State, 124 Ala. 14, 26 So. 979; Watkins v. State, 89 Ala. 82, 87, 8 So. 134; Jordan v. State, 81 Ala. 20, 1 So. 577. In Burton v. State, supra, the Chief Justice observed that a judgment of conviction for such offense "cannot be supported, when drawn in question on error, unless it is shown affirmatively by the record that there was by the court performance of these duties," citing authorities and concluding, "The present record does not affirmatively show that a day was set for the trial of the cause, nor that *there was the drawing of the special jurors for the trial,* as the statute requires." (Italics supplied.)

The foregoing observations were of the failure of the court in the premises then being considered. And in Spooney v. State, 217 Ala. 219, 115 So. 308, these statutory provisions were again declared mandatory as to the specific provisions of the statute touching the *court's order prescribing* the constituents of a special venire. And in Irwin v. State, 220 Ala. 160, 124 So. 410, the effect of the decision was that clerical and ministerial mistake in preparing the venire and list served on the defendant do not warrant quashing the venire, unless prejudice results. Evans v. State, 209 Ala. 563, 96 So. 923; Stinson v. State, 223 Ala. 327, 135 So. 571; Sullivan v. State, 23 Ala. App. 10, 119 So. 243; McNutt v. State, 23 Ala. App. 43, 121 So. 432.

■ ■■ And inconvenience must yield to defendant's statutory rights to have the veniremen in capital cases summoned to appear and their qualifications determined on the day of the trial. Stinson v. State, 223 Ala. 327, 135 So. 571. Under the agreed statement of facts no prejudicial error was shown to have re-sulted to the defendant for failure of resummoning the special jurors drawn and summoned for the week in which the cause was set for trial.

■■ The indictment was duly indorsed and presented; the indorsement was "A True Bill" signed by the foreman; and this was according to the statute. Spigener v. State, 62 Ala. 383; Williams v. State, 150 Ala. 84, 43 So. 182. This provision is mandatory. Wesley v. State, 52 Ala. 182; Ex parte Winston, 52 Ala. 419; Mose v. State, 35 Ala. 421; McKee v. State, 82 Ala. 32, 2 So. 451; Whitley v. State, 166 Ala. 42, 52 So. 203; Collins v. State, 23 Ala. App. 104, 121 So. 451; Layton v. State, 23 Ala. App. 297, 124 So. 406; Benson v. State, 68 Ala. 544; sections 4524 et seq., 8682, Code. The variance presented by the agreed statement of facts and motion, and the ruling of the court, between the original and the copy served on defendant—as to the initials of the foreman—was not of substance and did not invalidate the proceeding thereon to the trial.

■ The witness Dr. J. S. Marsh had qualified sufficiently as an expert to testify of the matter inquired about, and to the question, "Doctor just describe to the jury the location and the appearance and condition of any and all wounds you found on his person?" the witness answered: "He had six bullet wounds through his head (and also a lick on the back of the head). (The Court excluded this statement on the objection of defendant) One entered at the mouth, burning the lip and cutting off a front tooth, and made its exit at the junction of the base of the skull or the parietal bone with the occipital bone. One entered at the upper third of the left ear and made exit at the mastoid process behind the right ear. Another entered the upper third of the left ear. Another entered at the base of the skull just below the left ear and made exit at the top of the right of the parietal bone on the right side. Another entered in front of the last on the left side in front of the left ear and made exit on the left side above the ear and immediately above the ear. Another one entered on the right cheek and made exit behind and above the left ear. Another one entered below the right ear and made exit just in front and above the left ear. These all appeared to be bullet wounds."

This witness was further asked, "Were there any other wounds on him or about his head?" and answered: "The back portion of his skull was broken in a larger area than any exit of any bullet hole."

And that physician was permitted to describe the nature of the wound he examined on the back of the head, and to say it was his opinion as a physician, based upon his examination made on the body of deceased,

that it was "made by external violence," and made by a blow; and on further inquiry, that there was a blow "on the back of the head" which "was not made by the exit of a bullet that had been fired into the head from somewhere." Clemons v. State, 167 Ala. 20, 52 So. 467; Mobile Light & R. Co. v. Therrell, 205 Ala. 553, 88 So. 677; Roberson v. State, 183 Ala. 43, 48, 62 So. 837.

█ It is the rule that to authorize "a witness to give an opinion as an expert, it must appear that, by study, practice, experience, or observation as to the particular subject, he has acquired a knowledge beyond that of ordinary witnesses; otherwise, he would not be an expert and his knowledge, skill, or experience is not considered sufficient to inform the court or to guide the jury in reaching a correct conclusion upon the subject of inquiry. Wigmore on Ev. § 556; Mobile Life Ins. Co. v. Walker, 58 Ala. 290; Commonwealth v. Farrell, 187 Pa. 408, 41 A. 382; Kilbourne et al. v. Jennings et al., 38 Iowa, 533; Burgess' Case, 119 Ala. 669, 24 So. 727." Clemons v. State, 167 Ala. 20, 52 So. 467, 471.

And in Rash v. State, 61 Ala. 89, Judge Stone held that a physician and surgeon of long experience with gunshot wounds, and an expert in such matters, who saw the body of the deceased shortly after she received the wound, may give his opinion as to how it was inflicted. Thaggard v. Vafes, 218 Ala. 609, 612, 119 So. 647; Rohn v. State, 186 Ala. 5, 65 So. 42; Landham v. Lloyd, 223 Ala. 487, 136 So. 815; Dumas v. State, 159 Ala. 42, 49 So. 224, 133 Am. St. Rep. 17; McKee v. State, 82 Ala. 32, 2 So. 451; Blackburn v. State, 22 Ala. App. 561, 117 So. 614.

The bill of exceptions recites:

"The Solicitor for the State then asked the witness:

"I will ask you if in your judgment as a physician, based upon the examination you made on the body of the deceased, if that wound in the back of the head was produced by an outside blow or lick?

"To this question the defendant objected as incompetent, irrelevant and immaterial and calling for a conclusion of the witness.

"The Court overruled the objection. And to this ruling of the Court the defendant then and there duly excepted.

"And the witness answered and said: 'Yes, sir, it was made by external violence.'

"To this answer of the witness the defendant objected on the same grounds as to the question and that it was not responsive to the question and moved the Court to exclude the answer from the evidence.

"The Court thereupon said: 'Yes, I sustain the objection to that; state whether or not it was made by a blow?'

"To this question by the Court the defendant objected on the same grounds as to the question propounded by the Solicitor.

"This objection the Court overruled and to this ruling of the Court the defendant then and there duly excepted.

"The witness answered: 'Yes, it was made by a blow, an external blow.' "

█ It is declared that an inference of fact as to the relative positions or attitudes of the parties, or other inferences of fact of which the jury are capable of drawing as any other person, should be left to the jury to infer or draw from the facts detailed. Landham v. Lloyd, 223 Ala. 487, 489, 136 So. 815; McKee v. State, 82 Ala. 32, 2 So. 451; Dumas v. State, 159 Ala. 42, 49 So. 224, 133 Am. St. Rep. 17. There was no error in permitting the questions and answers set out above, and that the "back portion of his skull was broken in a larger area than any exit of any bullet hole; * * * that it was made by a blow, an external blow."

The witness Pierce was permitted to show that the parties to the homicide and others were in defendant's house from "about eleven o'clock" p. m. to "around two o'clock" a. m.; that they and others "sat at the kitchen table * * * poured out some drinks," and detailed conversations leading up to the misunderstanding. It is recited:

"Mr. Roan and Dr. Hicks got into an argument about some medical phrase about something the matter with his stomach some way, and Mr. Roan was proving by Dr. Wright that the words he used were correct, and finally branched off; *he asked him why he didn't go to church, and then Dr. Wright why he didn't go to church, that was Roan talking. He said to him, 'You know why you don't go.'* Roan said to Dr. Hicks, 'I bet you are a damned Methodist.' And Dr. Hicks immediately jumped up and hit the table with his fist or hit himself one and said, 'I am the damn best man in the county,' or something to that effect. Dr. Wright was there at that time. When Hicks said that, Mr. Roan said: 'What do you mean by that, Doc.?' And Dr. Hicks replied: 'By God, I mean just what I said.' And Roan got up out of the chair and said: 'Doc., just what do you mean by that?' And Hicks replied to him about the same answer he did before. And Mr. Roan turned to the negro and said: 'Turn on the light and give Doctor his hat.' And Dr. Hicks walked around behind me (Pierce, the witness) and went on out, after Roan made remark to negro witness heard but immediately went out, going behind witness through the pantry in-

to the side room. I got up as Dr. Hicks passed into the little side room." (Italics supplied.)

"As Dr. Hicks went into the little room Mr. Roan went along behind him to the pantry door and looked in that way, Dr.' Hicks had gone, turned and came through the kitchen into the room behind where Roan was sitting at the end of the table. This was not the side room. He walked back through the kitchen into the bedroom. His wife had gone into the bedroom before that, after Dr. Hicks had gone out. When Roan went to the pantry door he looked in the direction Dr. Hicks had gone. That he did not see Mrs. Roan go into that room. That Roan came back through the kitchen and went into the room where Mrs. Roan was, that he (witness) could see Roan standing there at edge of door like. That he heard Roan say: 'Hurry, Mamma, hurry.' That he heard Mrs. Roan say nothing. Roan came back through the kitchen to where witness and Dr. Wright were (where all the parties had been sitting at the table) and went on into the room where Dr. Hicks had gone. That he (witness) heard a little scuffling in there and the negro, Alfonso, stuck his head in the door and asked the witness Pierce to come in there and help separate them."

The witness (Pierce) then described the scene of the killing, as follows: "That he went into the room where the shots were heard with Dr. Wright and saw the body of Dr. Hicks lying across the bed, his feet towards the pantry door, his head was back against the wall or if not against back that way, lying directly across the bed. Noticed wounds on him, his face bloody, dead. Did not make any examination, only in there about a minute. Looked at him and walked out. Dr. Wright walked in there. I was right behind him and looked at the dead man and walked out. This was around two o'clock in the morning. The body was across the bed with leg extended straight out and his right leg back under him, flat on his back, face turned up. He had a knife in his right hand. Witness said he thought it looked like a barlow knife, held loosely; there was room in there, you could have put another knife in there by it. The knife was not gripped tightly. The witness showed how his legs were held or in the way his legs were. That he did not notice how far the bed was from the wall. His head was on the bed."

■■ The defendant then asked: "Mr. Pierce, you saw Dr. Hicks had got mad didn't you?" And: "To this question the State objected. The Court sustained the objection and to this ruling of the Court the defendant then and there duly excepted." In this there was error, as it was proper cross-examination and the statement of a shorthand

rendition of fact of anger. Jones on Ev. (2d Ed.) § 360, p. 452; Sovereign Camp, W. O. W. v. Hoomes, 219 Ala. 560, 563, 122 So. 686; Jenkins v. State, 82 Ala. 28, 2 So. 150; Miller v. State, 107 Ala. 40, 19 So. 37; South & North Ala. R. Co. v. McLendon, 63 Ala. 275; Carney v. State, 79 Ala. 14; Batson v. Batson, 217 Ala. 450, 456, 117 So. 10; Alabama Power Co. v. Edwards, 219 Ala. 162, 166, 121 So. 543; Fincher v. State, 211 Ala. 388, 392, 100 So. 657; James v. State, 193 Ala. 55, 69 So. 569, Ann. Cas. 1918B, 119.

The defendant was entitled to have the jury know, from the disinterested witness present, that deceased "had got mad" at the time indicated—immediately before and at the fatal encounter and homicide. In this ruling there was no reversible error, for witness further testified on cross-examination, "That Dr. Hicks appeared to be mad at the time he got up and struck himself and walked out of that room."

■■ It was competent for the state to show by its witness that he did not notice any wounds or blood on defendant immediately after he had fired the fatal shots and returned to the adjoining room where witness and others were; that he had "his pistol in his hand"; and his answer, "I don't know whether he still had the pistol in his hand or had laid it on the table," was without error.

■■ The question of a given fact not being of the res gestæ has been frequently discussed. The general rule is well understood. 22 C. J. 443, § 345; 5 Jones on Ev. § 235; 42 L. R. A. (N. S.) 918, notes. The rule of res gestæ of agency is stated in these cases; Southern Railway Co. v. Fricks, 196 Ala. 61, 71 So. 701; Alabama Great Southern R. Co. v. Hawk, 72 Ala. 112, 47 Am. Rep. 403; Birmingham Electric Co. v. Mealing, 214 Ala. 597, 108 So. 511; Sloss-Sheffield Steel & Iron Co. v. Bibb, 164 Ala. 62, 72, 51 So. 345; Ricketts v. Birmingham Street Ry. Co., 85 Ala. 600, 5 So. 353; Alabama Power Co. v. Edwards, 219 Ala. 162, 121 So. 543. It embraces all facts which are relevant, explanatory, or illustrative of, or which give character or characterize, the act or the principal fact for decision. Ward v. Lane, 189 Ala. 340, 346, 66 So. 499; Republic I. & S. Co. v. Passafume, 181 Ala. 463, 61 So. 327; Broyles v. Central of Georgia Ry. Co., 166 Ala. 616, 52 So. 81, 139 Am. St. Rep. 50; Masterson v. Phinizy, 56 Ala. 336. The statement attributed to defendant "after the shooting," that " * * * ain't anybody leaving here till I say for them to leave," when he had the pistol or "had laid it on the table," was weak, it is true, but of some evidentiary value as a part of the res gestæ in illustrating the character of the main fact and in tending to intimidate the witnesses present. State v. Stallings, 142

Ala. 112, 38 So. 261; Laws v. State, 209 Ala. 174, 95 So. 819; Dudley v. State, 185 Ala. 27, 64 So. 309.

There was no error of which defendant can complain, in allowing the witness Sells to tell the statement or invitation by defendant to deceased to go out on the brow of the mountain to examine him. It explained to the jury how deceased came to go out to defendant's on the occasion of the homicide.

It is immaterial how long the defendant's wife remained with her husband in the office of the deceased. However, it merely illustrated where and when she and her husband met and went from Dr. Hicks' office home, and that deceased came to the home of defendant a "few minutes after we (the wife and defendant) got there, about ten minutes."

There was no reversible error in excluding the remark of defendant to Pierce: "What got wrong with him." And the reply by the latter: "He does that every where he goes." It was the statement of an extraneous fact that should not have been injected into the trial.

It was material to show the movements of the defendant on the evening and night of the homicide, as touching his presence at home and the use of the pistol with which the homicide was committed, and where the pistol was kept by defendant.

Dr. Wright, as a witness for defendant, had testified of the result of his examination of defendant the day after the homicide: "Found bruises on his body" in "the lower part of his bowels * * * in his groins;" described the bruise, its location and extent, and "that it stuck out something about like my fist." The state's counsel then asked this witness whether or not defendant complained to him (the doctor) of suffering pain. To this objection was sustained. The physician was permitted to say the defendant gave him no history of any stomach trouble; that there was protrusion and swelling like a rupture that was "inflamed and red"; that he gave him "liniment and ointment" for use thereon, and made no further visit to the defendant. In this ruling there was no reversible error of which defendant may complain.

The witness Williamson, having testified that the deceased had the general reputation, in the neighborhood in which he lived, as "being a fussy, fighting, dangerous man when he was drinking," and that his general reputation was bad, described him as being "a strong man, weighing 190 to 200 pounds." The witness was asked on cross-examination several questions to test his knowledge of the general reputation and character of the deceased, and whether the witness "permitted Roan to come to Fort Payne and see a lawyer," after witness learned of the death of Hicks, to which the witness answered in the affirmative. The witness was further asked if "he did not arrest him (Roan) till a brother of Dr. Hicks came up and swore out a warrant," and answered: "Yes, sir." These questions and answers were for the jury to illustrate the witness' friendship, bias, or prejudice for or against the defendant. Such cross-examinations are held to be competent. 28 Alabama Digest, Witness, § 361; Stone v. State, 208 Ala. 50, 52, 93 So. 706.

The defendant, having been a witness in his own behalf, was recalled by the state's counsel for further cross-examination, and as to his testimony on a former trial, relative to deceased "throwing something out of his left hand," replied, " * * * He made that motion"; that the only thing he stated on the first trial about a shirt was, "This is the shirt I had on at that time." Proceeding with the cross-examination, the questions and answers were as follows:

"Q. I will ask you if you did not say this with regard to the pistol lying on the negro's bed that you testified to yesterday on that same occasion and at that same time, 'I didn't know it was there;' didn't you testify to that? A. I said yesterday I might have known it was, I saw the pistol and some rags there much earlier than that, I suppose about two o'clock.

"Q. You did see the pistol there that afternoon? A. Early in the afternoon.

"Q. I will ask you if on the former trial at the same place and time inquired about awhile ago, if you did not make this statement to the jury in the presence of his Honor: 'I didn't see the pistol on the bed till I went down on the bed, I did not dream the gun was there;' did you say that before? A. Yes, I did.

"Q. You testified to that? A. Yes, sir.

"Q. And if you did not continue by saying this: 'The pistol was toward the head of the bed lying out from the pillow a little ways with the barrel toward the head of the bed, when I went down on the bed that probably bounced it forward and I observed it. I did not see it till I went down, this was just luck;' didn't you testify to that? A. That is right. * * *

"Q. I will ask you if you didn't at that time testify to this: 'I believe I started shooting with my left hand when I started shooting?' A. I think I did.

"Q. And if you did not continue: 'All this was very rapid, I came around with the gun and I probably had both hands on the gun while it was shooting.' Is that right? A. I probably did; I don't remember all those details. . .

"Q. Now, you don't believe in a Supreme Being do you?

"To the question: *'Now you don't believe in a Supreme Being do you?'* the defendant objected because irrelevant, illegal, inadmissible, a denial of his rights under the Constitution of the United States and of the State, an effort to prejudice the defendant before the jury by creating or arousing a religious question." (Italics supplied.)

The court sustained this objection, whereupon counsel for the state said, "We would like to show Your Honor that case that holds that is proper going to his credibility as a witness," and made "an argument to the court which the stenographer did not note except the word argument in parenthesis, thus (Argument), after which counsel said: 'That is all then, we cannot except.'" There was no reversible error in this action of the court, nor in declining to withdraw the case from the jury.

■ Charge B, given at the request of the state, was not an invasion of the province of the jury, and stated a correct proposition of law. Russell v. State, 219 Ala. 567, 570, 122 So. 683; Bolton v. State, 209 Ala. 179, 95 So. 874; Crawford v. State, 112 Ala. 27, 21 So. 214; Watkins v. State, 89 Ala. 82, 8 So. 134; Storey v. State, 71 Ala. 329, 337. The cases are collected on "even though charges" which are justified in their refusal for the use of these words implying doubt or suspicion on other phases of the evidence or supposition. Louisville & N. R. Co. v. Parker, 223 Ala. 626, 646, 138 So. 231; Birmingham & A. Ry. Co. v. Campbell, 203 Ala. 296, 82 So. 546; Alabama Produce Co. v. Smith, 224 Ala. 688, 141 So. 674. Such is not this charge. While the charge states a correct proposition of law, in form it was bad as argumentative and abstract.

■ The books are full of observations that, in their deliberations, the jury should be separated from and uninfluenced by the outside world, and misconduct that "might have influenced them and might have affected the verdict that was rendered." Leith v. State, 206 Ala. 439, 443, 444, 90 So. 687; Central of Georgia Ry. Co. v. Holmes, 223 Ala. 188, 192, 134 So. 875; Continental Casualty Co. v. Ogburn, 186 Ala. 398, 64 So. 619; McCormick v. Badham, 204 Ala. 2, 85 So. 401; Lauderdale v. State, 22 Ala. App. 52, 112 So. 92. The motion for a new trial should have been granted because of the improper conduct of a citizen of the county, not a juror speaking to one of the jurors, but a citizen of the "same community" in which the "juror lived" (a brother-in-law of another juror), saying: "He will get it poured into him now." The test of vitiating influence is not that it did influence a member of the jury to act without the evidence, but that it

might have unlawfully influenced that juror and others with whom he deliberated, and might have unlawfully influenced its verdict rendered. Kansas City, M. & B. R. Co. v. Phillips, 98 Ala. 159, 13 So. 65; Arrington v. State, 23 Ala. App. 201, 123 So. 99; Collum v. State, 21 Ala. App. 220, 107 So. 35.

■ We may conclude by saying that after allowing the reasonable presumptions in favor of the correctness of the verdict rendered—guilty of murder in the first degree—we are clear to the conclusion that on the evidence before us the preponderance thereof is against the verdict rendered; and it is so decided that the verdict should not be allowed to stand for that degree of homicide. McTyeire v. McGaughy, 222 Ala. 100, 130 So. 784, and authorities; Bufford v. State. (Ala. App.) 141 So. 359.

The case should be retried, and the judgment of the circuit court is reversed and the cause remanded.

Reversed and remanded.

ANDERSON, C. J., and BROWN and KNIGHT, JJ., concur.