WELCH, Judge.
This appeal arises out of the misappropriation of funds from the Wilcox County Water/Waste Department, where Towanda Taite and codefendant Sylvia Ross had been employed. Taite was charged by a Wilcox County grand jury in case no. CC-07-2006 with theft of property in the first degree, a violation of § 13A-8-3, Ala.Code 1975, and with a violation of the State ethics laws — using her official position or office for personal gain, a violation of § 36-25-5, Ala.Code 1975. Identical charges were filed against Sylvia Ross in case no. CC-07-2007. Following a consolidated jury trial Ross and Taite were convicted of misapplication of property and of the ethics-laws violation.[1] The trial court imposed on Taite a 1-year jail sentence for the misapplication-of-property conviction and a 10-year sentence for the ethics-laws conviction. The trial court suspended the sentences and ordered Taite to serve two years’ imprisonment followed by five years of supervised probation. The trial court further imposed an assessment of $10,000 and an assessment to be paid to the Crime Victims Compensation Commission. We reverse and remand for further proceedings.

Facts

The evidence presented at trial tended to show that a routine audit of the Wilcox County Water/Waste Department (“the Water Department”), where Taite and Ross were employed as clerks, revealed that the Water Department had received more than $11,000 in receipts that could not be accounted for on the morning of the audit. The auditor testified that Ross and Taite were the only two people with access to the Water Department’s receipts. Daily reports for six days revealed that money had been received at the office but had not been deposited at the bank. Taite told one of the auditors that the receipts were at the bank, so Taite and two auditors went to the bank together. Taite spoke to a teller at the bank and then told the auditors that the teller had not yet processed the deposits. No deposits were ever produced, and bank employees stated that there were no undeposited funds from the Water Department at the bank. The auditors contacted their supervisors and the Wilcox County Commission. The Wilcox County Sheriff’s Department was also notified.
During the morning of the audit, Taite took a bank bag from the Water Department to a teller at the bank where the Water Department’s funds were deposited; the bag contained no checks or currency, only duplicate copies of deposit slips. Taite asked the head teller to stamp the copies of the deposit slips as if the money represented by the slips had been deposited. Taite assured the teller that she would bring the money to the bank later. The teller refused to complete the transaction, and she notified her supervisor and the bank’s auditor.
*3 After the Wilcox County Commission was notified that money was missing from the Water Department, Ross was interviewed by a Wilcox County sheriffs deputy. Ross told the deputy that she and Taite had been using money from the nightly deposit and that they had been replacing it. The auditors then conducted a second count of the cash at the Water Department’s office. This cash count revealed money in an envelope that had not been counted previously. When the auditors asked Taite where that money had been, Taite said that the money had been at the bank when the initial count had been conducted. Five additional deposits, comprising more than $9,000, were made at the bank that afternoon. All the money that had been missing during the auditors’ initial count of the receipts was accounted for by the end of the day.
After the trial, Taite filed a motion for a new trial in which she alleged, among other things, that one of the jurors, F.G., had presented extrinsic evidence to her fellow jurors during jury deliberations. Specifically, Taite alleged that F.G. had stated during deliberations that Taite had a prior conviction and had been imprisoned. Affidavits from three jurors were filed along with the motion for a new trial. Juror M.B. stated in her affidavit, in relevant part:
“I was a juror in the above referenced cases involving Sylvia Ross and Towan-da Taite.
“When we were in the jury room, someone in the jury room said that To-wanda Taite had already been in prison one time. I can not say for sure which juror said this. I do believe that this had an effect on the jurorsf] vote of guilty. My first vote was not guilty. [Jury foreman M.M.] told all the jurors that we were going to vote guilty on the second and third charges against each defendant. He said that everyone had to vote guilty as the first vote was seven guilty and five not guilty. [M.M.] told us the charges we were voting guilty for were lesser charges. I thought that both guilty charges were for lesser charges. Someone said that we had to find both defendants guilty. That we could not find one defendant guilty and one defendant not guilty.
“When the judge polled the jury after the verdict, I did not say that this was my verdict. The guilty verdicts were not my verdicts.”
(C. 61.)
Juror S.A. submitted an affidavit that stated, in relevant part:
“[Juror F.G.] said in the jury room that Towanda Taite had had a prior felony.
“[Jury foreman M.M.] said that we had to find both defendants the same. That we couldn’t find one guilty and one not guilty.
“I did not believe that the state had enough evidence or proof that either of the defendants were guilty. My vote from the beginning was not guilty.”
(C. 68.)
Finally, Juror N.F. submitted an affidavit and stated, in relevant part:
“I was a juror in the above referenced cases involving Sylvia Ross and Towan-da Taite.
“When we first took a vote in the jury room, the vote was seven guilty and five not guilty votes. [Jury foreman M.M.] told us that the guilty votes outweighed the not guilty and that we had to go along with the guilty. I had never been on a jury before and I thought it was what I had to do. My vote was not guilty. I did not voluntarily vote guilty. I did not vote guilty at all.
*4 “One of the jurors, [F.G.], told us that if we didn’t convict, that they would both get their jobs back. She also told us that Towanda Taite had been to prison one time and that she needed to go back.
“[Jury foreman M.M.] told us that we had to find both defendants the same. That if one was guilty, then both were guilty.
“I did not believe that the state had enough evidence or proof that either of the defendants were guilty.”
(C. 65.)
The trial court held a hearing on the motion. Ten of 12 jurors testified at the hearing pursuant to subpoenas, including the 3 jurors who had submitted affidavits about the comments another juror had made during deliberations. The trial court conducted the questioning, and asked each of the jurors whether he or she recalled any juror making a statement during deliberations about one of the defendants’ having a prior conviction. Eight of the jurors testified that they remembered such a statement being made. The jury foreman, M.M., testified that the statement was made after the jury had determined that Ross and Taite were guilty. He said that when one of the jurors said that she hated to see the defendants be put in jail, another juror stated that “it shouldn’t matter to Towanda Taite because she’s already been in jail.” (R. 205.) Juror S.A., who had given an affidavit about the matter, testified that a fellow juror had stated that Taite had previously been convicted of a felony. S.A. stated that statement was made near the time the jury voted, and she testified that the information affected her vote. Specifically, S.A. testified, “Before that was mentioned, I was planning on voting — at the time — I reckon I can say that — not guilty. That was the vote I had in my mind to do.” (R. 208-09.) Juror P.O. testified that during the middle of deliberations a juror stated that Taite had “done time.” (R. 210.) P.O. testified that the statement did not affect her verdict. Juror M.B., who had also provided an affidavit after the trial, testified that a juror had stated that Taite previously had been to prison. When the trial court asked M.B. how the comment had affected her, M.B. answered, “Well, at one time, it affected me but then again, when I thought about it, it really didn’t bother me because I had already decided what I was going to vote.” (R. 212.) Juror S.C. testified that she could not recall any mention during deliberations of a prior conviction or sentence for either defendant. Juror N.F. testified that, before a verdict had been reached, Juror F.G. had stated that Taite had been to prison and that she needed to go back. N.F. further testified:
“We were getting ready to reach the verdict and we wanted to do — [Juror R.M.] asked could we do Sylvia Ross[’s] case first because we didn’t have no evidence on Towanda Taite. And that’s when [F.G.] said how could we do her case first when both them did the crime together. And she said we let them get off, they going to get they job back. Then she said she already been in prison and she needs to go back.”
(R. 215.)
When the trial court asked N.F. whether the statement affected her vote, N.F. replied, “Really my verdict was not guilty because I really think the State didn’t have enough evidence no way to convict her.” (R. 215.) The court asked N.F., “Yet you told me when I asked you that, that was your verdict?” N.F. replied, “Yeah. This [was] my first time being on a jury so I didn’t think that, you know, I didn’t know anything.” (R. 215.) The trial court then asked N.F. whether the jury had believed that the State had presented a stronger case against Ross than it had presented *5 against Taite, and N.F. replied, “No, not really. First, we — see Sylvia Ross wrote the statement that said that her and To-wanda did take the money from the night deposit. But we didn’t see no handwriting that Towanda did anything.” (R. 216.)
Juror F.G. denied stating during deliberations that one of the defendants had previously been convicted or had been incarcerated. F.G. said that she heard someone else make that statement about Taite, however. F.G. testified that she could not recall the point during deliberations when the statement was made, and she said the statement did not affect her vote. When the trial court asked Juror B.H. whether she recalled a statement being made during deliberations about one of the defendants having a previous conviction or having been incarcerated, B.H. testified that she was not sure. Juror R.M. recalled hearing a statement from another juror indicating that Taite had been imprisoned or had a prior conviction. R.M. testified that hearing the statement did not affect her vote. Finally, Juror E.S. testified that near the end of deliberations, she heard someone state that Taite had previously “served time.” (R. 221) E.S. testified that the statement did not affect her vote.
The trial court entered a written order denying the motion for a new trial. The trial court stated, in relevant part:
“The only issue into which the Court may inquire is whether there was any outside influence or extraneous information ... brought into the deliberations. The Court allowed this inquiry and 10 of the jurors testified about this matter. The Court finds as a fact that a statement regarding Taite’s prior criminal conviction was made by one of the jurors during the deliberations. Every juror who was questioned, except 2, testified that it was mentioned. The other 2 did not testify that it was not mentioned, but that they could not recall. Every juror except the 3 who gave affidavits said it had no effect on the verdict. Those 3 said that it did affect them, but these are also the same 3 who, in their affidavits, testified that they either did not vote guilty or only voted guilty because the foreman told them that they had to. While the Court has found that there was extraneous information brought in by the mention of Taite’s prior criminal record, the Court does not believe that either the jury or its verdict was the result of this information. While prejudice is presumed, the Court finds that this presumption is overcome by the totality of the evidence. It appears that the information was a passing remark made that did not affect the verdict. The jurors themselves stated that either it did not affect them or they initially gave a different reason for attacking the verdict. As previously stated, the evidence clearly established the Defendant’s guilt.”
(C. 81-82.)

Analysis

On appeal, Taite raises two issues. First, she argues that the trial court erred when it denied the motion for a new trial based on alleged juror misconduct that occurred when Juror F.G. failed to reveal during voir dire examination that she knew that Taite had a prior conviction, and that this omission prevented her from receiving a fair and impartial jury. Second, Taite argues that juror misconduct occurred when F.G. told the other jurors during deliberations that Taite had previously been convicted of a crime or that she had served a term of imprisonment; she fur.ther argues that this extraneous information resulted in prejudice and requires that her convictions be reversed.
*6 A trial court’s ruling on a motion for a new trial will not be reversed on appeal unless the trial court abused its discretion when it entered the ruling. E.g., Apicella v. State, 809 So.2d 841, 847 (Ala.Crim.App.2000), aff'd, 809 So.2d 865 (Ala.2001); Woodson v. State, 794 So.2d 1226, 1230 (Ala.Crim.App.2000).

Extraneous evidence

Rule 606(b), Ala. R. Evid., provides, in pertinent part:
“[A] juror may not testify in impeachment of the verdict ... as to any matter or statement occurring during the course of the jury’s deliberations or to the effect of anything upon that or any other juror’s mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror’s mental processes in connection therewith, except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury’s attention or whether any outside influence was improperly brought to bear upon any juror.”
(Emphasis added.)
The trial court stated in its order denying the motion for a new trial that the mention by a juror of Taite’s prior conviction constituted extraneous evidence but that the verdicts were not affected by the jurors’ exposure to that evidence. We agree with the trial court that the juror’s statement during deliberations regarding Taite’s prior conviction or incarceration constituted juror misconduct.
We note, initially, that the trial court’s inquiry into whether extraneous prejudicial information was improperly introduced into the deliberative process was entirely consistent with Rule 606(b), Ala. R.Crim. P. “We are not faced with the general rule which forbids jurors from impeaching their own verdict. This well entrenched rule relates to intrinsic influence and is based on the sound public policy of judicial administration which zealously guards the sanctity of the jury room.” Nichols v. Seaboard Coastline Ry., 341 So.2d 671, 673 (Ala.1976). Taite produced allegations and testimony by way of affidavits that a juror had disclosed during deliberations that Taite previously had been imprisoned; that information was not gained during the trial process. The State did not argue in the trial court that the juror’s statement about Taite’s prior conviction or imprisonment did not constitute extraneous evidence; the State did not argue in the trial court that the jurors’ affidavits should be stricken; and the State did not argue in the trial court that the jurors should not be questioned about whether they heard a juror make the statement about Taite’s prior conviction and about the effect that statement had on their verdicts. To the contrary, the State argued to the trial court at the hearing on the motion for a new trial that the hearing should be continued so that it also had the opportunity to question the jurors about the allegation. The State cited Reynolds v. City of Birmingham, 723 So.2d 822 (Ala.Crim.App.1998), in support of its request for time to interview the jurors. In Reynolds, the defendant had filed a motion for a new trial based on affidavits from jurors who testified that, before the jury began its deliberations, another juror in the case who had visited a scene relevant to the case, had told other jurors about her observations and her opinion in the case based on those observations. The City’s attorneys then obtained affidavits from several jurors to dispute Reynolds’s allegations of juror misconduct. In this case, the State also wanted to question the jurors about the extraneous evidence and its effect, if any, on their verdicts.
*7 The trial court found as a fact, and the State did not dispute in the trial court, that the statement about Taite’s incarceration was extraneous evidence.
In Clarke-Mobile Counties Gas District v. Reeves, 628 So.2d 368 (Ala.1993) (plurality opinion), a case involving allegations that Clarke-Mobile Counties Gas District had buried a gas line on private property without the owner’s permission, one juror told the other members of the jury that “ ‘Clarke-Mobile Counties Gas District had gone across her son’s land and messed it up and did not ask permission.’” 628 So.2d at 370. A plurality of the Supreme Court stated:
“Commonly, statements falling within the ‘extraneous facts’ exception — statements that influence the deliberations and the verdict but do not concern the ‘debates and discussions of the case’ during deliberations — ‘are made to the jury by someone not on the jury.’ [Alabama Power Co. v. Turner, 575 So.2d 551, 557 (Ala.1991)]. This is, however, not always the case. See, e.g., Hallmark v. Allison, 451 So.2d 270 (Ala.1984). Here, although the statement in question came from a juror, it nonetheless fits within the ‘extraneous facts’ exception. The juror stated, inter alia, that after the jury had retired to deliberate, the second juror ‘advised me and the other jurors that Clarke-Mobile Counties Gas District had gone across her son’s land and messed it up and did not ask permission. This statement ... was taken into account by me and influenced my decision in the case.’ R. 91. This testimony clearly relates to an extraneous matter that influenced the deliberations and the verdict in this case.”
628 So.2d at 370 (emphasis added).
The information introduced to the jury here was not based on the juror’s personal experiences as part of the debate and discussion during deliberations. Rather, the information originated outside the scope of the trial and it was — as the State implicitly conceded at trial and as the trial court correctly determined — extraneous information within the scope of the exception provided for in Rule 606(b).[2]

Prejudice

Although we agree with the trial court’s determination that extraneous evidence was introduced to the jury during its deliberations and with the court’s apparent determination that prejudice as a result of the consideration of that evidence was presumed, we disagree with the trial court’s conclusion that the prejudice was somehow overcome by the totality of the evidence.
In Apicella v. State, 809 So.2d 841, 847 (Ala.Crim.App.2000), aff'd, 809 So.2d 865 (Ala.2001), during the guilt phase of a capital-murder trial, Juror S.B. contacted a friend who was an attorney and asked the friend about the law relating to complicity, a legal principle relevant to the case. During a hearing on Apicella’s motion for a new trial, the juror testified that he had not communicated to the other members of the jury the information he had gained during the conversation with his attorney friend, and he testified that the conversation did not affect his interpretation of the *8 law or his vote. The trial court denied Apicella’s motion for a new trial, and this Court affirmed Apicella’s conviction and sentence. Apicella v. State, 809 So.2d 841 (Ala.Crim.App.2000). The Alabama Supreme Court affirmed this Court’s judgment, Ex parte Apicella, 809 So.2d 865 (Ala.2001), and it stated:
“[Juror] S.B. testified that his conversation with T.R.[, the attorney,] lasted approximately 2 1/2 minutes, that T.R. was distracted during the conversation, and that they discussed the law of complicity only in the most general of terms. S.B. further testified that T.R.’s comments did not enter into his thoughts during deliberations and that the trial court’s instructions on the law of complicity were ‘crystal clear.’ There is no question that S.B.’s actions constituted misconduct. At issue is whether this misconduct warrants a new trial.
“Generally, under Alabama law, juror misconduct involving the introduction of extraneous materials warrants a new trial when one of two requirements is met: 1) the jury verdict is shown to have been actually prejudiced by the extraneous material; or 2) the extraneous material is of such a nature as to constitute prejudice as a matter of law. Knight v. State, 710 So.2d 511, 517 (Ala.Crim.App.1997). We conclude that neither of those requirements has been met in this case.
“Apicella argues that when a court is determining whether a juror’s conduct has caused actual prejudice the standard applied is whether the extraneous material ‘might have influenced that juror and others with whom he deliberated,’ Roan v. State, 225 Ala. 428, 435, 143 So. 454, 460 (1932). Apicella relies heavily upon this statement in Roan:
“ ‘The test of vitiating influence is not that it did influence a member of the jury to act without the evidence, but that it might have unlawfully influenced that juror and others with whom he deliberated, and might have unlawfully influenced its verdict rendered.’
“225 Ala. at 435, 143 So. at 460.
“On its face, this standard would require nothing more than that the defendant establish that juror misconduct occurred. As Apicella argues, the word ‘might’ encompasses the entire realm of possibility and the court cannot rule out all possible scenarios in which the jury’s verdict might have been affected.
“However, as other Alabama cases establish, more is required of the defendant. In Reed v. State, 547 So.2d 596, 598 (Ala.1989), this Court addressed a similar case of juror misconduct:
“ ‘We begin by noting that no single fact or circumstance will determine whether the verdict rendered in a given case might have been unlawfully influenced by a juror’s [misconduct]. Rather, it is a case’s own peculiar set of circumstances that will decide the issue. In this case, it is undisputed that the juror told none of the other members of the jury of her experiment until after the verdict had been reached. While the question of whether she might have been unlawfully influenced by the experiment still remains, the juror testified at the post-trial hearing on the defendant’s motion for a new trial that her vote had not been affected by the [misconduct].’
“It is clear, then, that the question whether the jury’s decision might have been affected is answered not by a bare showing of juror misconduct, but rather by an examination of the circumstances particular to the case. In this case, as in Reed, the effect of the misconduct was *9 confined to the juror who committed the misconduct. The Reed Court stated:
“ “We cannot agree with the defendant that the verdict rendered might have been unlawfully influenced, where the results of the [misconduct] were known only to the one juror who [committed the misconduct] and that juror remained unaffected by the [misconduct].’
“547 So.2d at 598. Because no evidence indicates that S.B. shared the content of his conversation with the other members of the jury and because no evidence indicates that S.B.’s own vote was affected, we cannot say the trial court abused its discretion in finding no actual prejudice.”
809 So.2d at 870-71.
“Extraneous facts introduced in jury deliberations can result in actual prejudice or in prejudice as a matter of law, also called presumed prejudice.” Ex parte Arthur, 835 So.2d 981, 983 (Ala.2002). The Alabama Supreme Court in Ex parte Apicella discussed the differences between presumed prejudice and actual prejudice:
“Apicella also argues that we should hold the extraneous material introduced through S.B.’s conversation with T.R. to be prejudicial as a matter of law. Api-cella supports this argument with the following language from Knight [v. State], 710 So.2d [511,] 517 [ (Ala.Crim.App.1997) ]:
“ ‘ “Juror misconduct will justify a new trial ... when from the extraneous facts prejudice may be presumed as a matter of law.” Whitten v. Allstate Ins. Co., 447 So.2d 655, 658 (Ala.1984).... However, in some cases, “the character and nature of the extraneous material [constitute] prejudice as a matter of law and no showing that the jury was in fact influenced thereby in arriving at their verdict is necessary.” Id. (prejudice presumed as a matter of law from jury’s consulting encyclopedia and dictionary definitions ...).’
“(Quoting Minshew v. State, 594 So.2d 703, 716 (Ala.Crim.App.1991)).
“On the other hand, we have also held that ‘mere exposure to [a] definition does not require a new trial as a matter of law.’ Pearson v. Fomby, 688 So.2d 239, 245 (Ala.1997). Our holding in’ Pearson serves to emphasize the limitations of the doctrine of ‘prejudice as a matter of law.’
“Generally, a presumption of prejudice applies only in a case in which the jury’s consideration of the extraneous material was ‘ “crucial in resolving a key material issue in the case.” ’ Dawson v. State, 710 So.2d 472, 475 (Ala.1997) (citing Hallmark v. Allison, 451 So.2d 270, 271 (Ala.1984), and Ex parte Thomas, 666 So.2d 855 (Ala.1995)).
“We are not willing to presume prejudice as a matter of law in this case. No evidence indicates that extraneous information arising from S.B.’s conversation influenced S.B.’s vote or that the information was ever considered by any other member of the jury. This case is distinguishable from cases such as Nichols v. Seaboard Coastline Railway, 341 So.2d 671 (Ala.1976) (prejudice found as a matter of law where juror brought definitions into the jury room during deliberations and copied them onto a chalkboard). We conclude that the particular circumstances of this case provide no basis for finding prejudice as a matter of law.”
809 So.2d at 871-72.
Guided by the principles discussed in Ex parte Apicella and the cases cited therein, we have examined the specific circumstances of this case, and we find that those *10 circumstances lead necessarily to the conclusion that the jury’s exposure to and consideration of extraneous information resulted in prejudice as a matter of law and in actual prejudice to Taite.

Prejudice as a matter of law

There was no dispute that the juror who knew of Taite’s previous conviction conveyed this extraneous information to the other jurors during their deliberations. The juror’s statement about Taite’s imprisonment was not based on evidence submitted at trial. “It is fundamental to a fair trial that jurors should consider only the evidence presented at trial.” Reynolds v. City of Birmingham, 723 So.2d 822, 824 (Ala.Crim.App.1998). See also Ex parte Troha, 462 So.2d 953, 954 (Ala.1984) (“It is a well settled principle of law, and, further, it is fundamental to a fair trial, that jurors should consider only the evidence presented at trial.”). Information about a defendant’s prior conviction is unquestionably prejudicial, particularly when that information is unverified, is not revealed as properly admitted evidence subject to cross-examination during the trial process, and is unaccompanied by any jury instruction with regard to its limited use.
“[The Alabama Supreme] Court has acknowledged the inherently prejudicial nature of evidence of a defendant’s prior convictions. Cofer v. State, 440 So.2d 1121, 1124 (Ala.1983) (‘[e]vidence of pri- or bad acts of a criminal defendant is presumptively prejudicial to the defendant’). ‘The general exclusionary rule bars the state from introducing evidence of an accused’s prior criminal acts for the sole purpose of proving the propensity of the accused to commit the charged offense.’ Hobbs v. State, 669 So.2d 1030, 1032 (Ala.Crim.App.1995). Thus, evidence of prior convictions is admissible only for limited purposes. ‘The basis for the rule lies in the belief that the prejudicial effect of prior crimes will far outweigh any probative value that might be gained from them. Most agree that such evidence of prior crimes has almost an irreversible impact upon the minds of the jurors.’ Cofer, 440 So.2d at 1123 (quoting Charles W. Gamble, McElroy’s Alabama Evidence § 69.01 (3d ed.1977)). The general exclusionary rule ‘protects the defendant’s right to a fair trial’ by seeking “‘to prevent conviction based on a jury belief that [the] accused is a person of bad character. The jury’s determination of guilt or innocence should be based on evidence relevant to the crime charged.” ’ Cofer, 440 So.2d at 1123 (citation omitted). Thus, it naturally follows that the trial court should take all necessary precautions to ensure that when evidence of a defendant’s prior convictions is admitted into evidence, the jury is properly instructed on the purpose for which it may consider that evidence. This includes instructing the jury, sua sponte, that it may not consider the evidence of prior convictions as substantive evidence that the defendant committed the charged offense.”
Ex parte Minor, 780 So.2d 796, 802 (Ala.2000).
The affidavits submitted by Jurors M.B. and N.F. along with Taite’s motion for a new trial indicated that the jury’s preliminary vote was not unanimous. Therefore, information about Taite’s alleged prior conviction would have suggested that Taite had a propensity to commit illegal acts, which was “ ‘crucial in resolving a key material issue in the case.’ ” Dawson v. State, 710 So.2d 472, 475 (Ala.1997) (citing Hallmark v. Allison, 451 So.2d 270, 271 (Ala.1984), and Ex parte Thomas, 666 So.2d 855 (Ala.1995)). The juror’s statement about Taite’s alleged prior conviction made it more likely that the jury found *11 Taite guilty based on the jury’s belief that she was of bad character and that the prior conviction tended to show her guilt in the case under consideration by the jury. The jury’s exposure to and consideration of this inherently prejudicial and unproven statement is in the limited category of information that results in prejudice as a matter of law. The trial court should have granted the motion for a new trial after it found that extrinsic evidence had been introduced into the deliberation process and that presumed prejudice resulted from the extrinsic evidence. See Hallmark v. Allison, 451 So.2d at 271-72 (“Although we are unable to determine whether the introduction of the extraneous facts did change the decision of the jurors, consideration of the extraneous facts was crucial in resolving a key material issue in the case, and we conclude that the trial court could not reasonably have found that the introduction of the extraneous facts into the jury’s deliberations was not prejudicial.”).

Actual prejudice

Even if the extraneous information had not resulted in prejudice as a matter of law, we would reverse the trial court’s judgment because the extraneous information affected the deliberations and the verdicts and, therefore, resulted in actual prejudice to Taite. As detailed earlier in this opinion, the record contains undisputed evidence in affidavits submitted with Taite’s motion for a new trial and in the testimony at the hearing on the motion for a new trial that the extraneous information affected the votes of at least three jurors.
In Ex parte Lasley, 505 So.2d 1263 (Ala.1987), the Alabama Supreme Court reversed this Court’s judgment affirming Easley’s convictions for first-degree assault; Lasley had been convicted of severely burning two children by allegedly placing or holding them in scalding water. Lasley testified that while bathing the children, he had been distracted by a knock at the door and that when he returned to the bathroom the children were standing in scalding water. After the trial it was discovered that three jurors conducted separate home experiments to test the defense’s theory and that one of the jurors had also consulted a law book. The Alabama Supreme Court stated:
“The integrity of the factfinding process is the heart and soul of our judicial system. Judicial control of the jury’s knowledge of the case is fundamental. Our rules of evidence are designed, so far as humanly possible, to produce the truth and to exclude from the jury those facts and objects which tend to prejudice and confuse. Evidence presented must be subject to cross-examination and rebuttal. The defendant’s constitutional rights of confrontation, of cross-examination, and of counsel are at stake.”
505 So.2d at 1264. The jurors had apparently testified that their verdicts had not been affected by the extraneous information because the Court also stated:
“Considering three separate home experiments and the consultation of law books by one juror, we conclude that the jury might have been influenced, notwithstanding the jurors’ statements to the contrary. The jurors cannot in every case determine the question of whether they were, or might have been, improperly influenced.”

Id.

The testimony in this case, however, establishes that the extraneous information affected the deliberations and the verdicts. Juror S.A. testified that the information affected her vote, and specifically, that she had intended to cast a not-guilty vote until she heard the extraneous information. The affidavit submitted by juror M.B. indicated that she believed that the jurors’s votes were affected by the extraneous in *12 formation, and she testified at the hearing that “at one time” the information had affected her vote. Thus the record reveals clear proof from the affidavits and from the testimony of S.A. at the hearing on the motions for a new trial that the deliberations and verdicts were influenced by the extraneous information. Unlike the circumstances in Ex parte Apicella, supra, in which the Alabama Supreme Court found that no actual prejudice had resulted from the introduction of extraneous material by a juror, the trial court here had evidence indicating that the extraneous information was shared with other jury members and that consideration of that information affected the jury’s deliberations and its verdicts. The criteria the Alabama Supreme Court set forth for finding actual prejudice were met in this case. Therefore, the trial court could not have reasonably concluded that the consideration of the extraneous information did not result in prejudice to Taite. That the deliberations and the verdicts were affected was undisputed. See Jordan v. Brantley, 589 So.2d 680, 682 (Ala.1991) (“We conclude that the trial court could not have found that the extraneous material was not prejudicial, because there was undisputed evidence that the extraneous material had influenced jurors.”).
In Clarke-Mobile Counties Gas District v. Reeves, supra, one juror told the other members of the jury during deliberations about information she had gained outside of the trial process, and another juror testified by affidavit after the trial, “ ‘This statement ... was taken into account by me and influenced my decision in the case.’ ” 628 So.2d at 370. The plurality in Clarice-Mobile found that the extraneous evidence from a juror warranted reversal of the judgment, and stated:
“Here, although the statement in question came from a juror, it nonetheless fits within the ‘extraneous facts’ exception. The juror stated, inter alia, that after the jury had retired to deliberate, the second juror ‘advised me and the other jurors that Clarke-Mobile Counties Gas District had gone across her son’s land and messed it up and did not ask permission. This statement ... was taken into account by me and influenced my decision in the case.’ R. 91. This testimony clearly relates to an extraneous matter that influenced the deliberations and the verdict in this case. Accordingly, we reverse the judgment and remand this case for a new trial.”
628 So.2d at 370.
As in Clarke-Mobile, there is no dispute in this case that a juror had extraneous information, that the extraneous information was communicated to other jurors, and that that information was considered by other jurors and affected the deliberations and the verdicts. We note that, even though several jurors testified at the post-trial hearing that the extraneous information did not affect their votes, the Alabama Supreme Court has recognized that “[t]he jurors cannot in every case determine the question of whether they were, or might have been, improperly influenced.” Ex parte Lasley, 505 So.2d at 1264. The prejudicial impact of information about a prior conviction would have been virtually impossible to ignore. The clear proof of actual prejudice requires that Taite receive a new trial.
Because we have determined that juror misconduct leading to the jurors’ consideration of extraneous evidence prejudiced Taite, we need not discuss the other allegation of error she raises on appeal. For all the foregoing reasons, we reverse the trial court’s denial of the motion for a new trial and remand the case for proceedings consistent with this opinion.
REVERSED AND REMANDED.
*13 KELLUM, J., concurs. WISE, P.J., and WINDOM, J., concur in the result. MAIN, J., dissents, with opinion.

. Ross has filed a separate appeal from her convictions and sentences. Appeal no. CR-07-2244. As of the time of the release of this opinion, Ross's appeal is still pending.

. In his dissenting opinion, Judge Main states that the juror’s comment about Taite’s conviction was not improper, and that jurors should be permitted to apply their “community knowledge” during the deliberative process. Jurors are permitted to rely on their "common knowledge,” which is defined as “[a] fact that is so widely known that a court may accept it as true without proof,” Black’s Law Dictionary 293 (8th ed.2004). The term "community knowledge,” however, is undefined in the dictionary or in Judge Main’s dissent. To the extent a “community’s knowledge” might include gossip and hearsay, that can never be the permissible basis for a jury’s decision.