Robert McCray (the appellant) and Boise Minor were jointly indicted in a three-count indictment: (1) count I charged the appellant with kidnapping in the first degree, in violation of § 13A-6-43, Code of Alabama 1975; (2) count II charged the appellant *Page 674 
with attempted murder, in violation of §§ 13A-4-2 and 13A-6-2, Code of Alabama 1975; and (3) count III charged the appellant with theft of property in the first degree, in violation of §13A-8-3, Code of Alabama 1975. The petit jury found the appellant guilty of "kidnapping in the second degree and assault in the second degree" and found him not guilty of theft of property. The trial judge sentenced the appellant to 15 years' imprisonment for the kidnapping charge and 10 years' imprisonment for the assault charge, both of these to run concurrently. The trial judge also ordered the appellant to pay $50 to the Alabama Crime Victims Compensation Fund.
Because the jury deliberation room at the Macon County Courthouse is so small, the trial judge permitted the jury to deliberate in the courtroom. During the deliberating process, some of the jurors spotted and read portions of the Alabama Pattern Jury Instructions on the trial judge's bench.
The appellant filed a motion for a new trial following his conviction. A hearing was held on this motion, and testimony was taken from five of the former jurors. See Dumas v. State,491 So.2d 1083 (Ala.Cr.App. 1986) (jurors may not be required to disclose the nature of their deliberations, except where the jurors have considered extraneous matters); Allen v. State,494 So.2d 777 (Ala.Cr.App. 1985) (same). Of the five jurors, four admitted that they either looked at the book or saw someone looking at it. All four jurors stated that the discussion based on the pattern jury instructions did not affect their verdict. They also stated that they did not understand what they read.
The testimony of these jurors further established that, after a few hours of deliberations, they were deadlocked (11 for conviction and 1 for acquittal). The judge then released the jury for the day and told them to come back the following morning.
The next morning, the jury returned and began deliberating again. The sole juror who continued to hold out against conviction told others that she would be willing to compromise on a lesser verdict. It was at this time that some of the jurors looked at the pattern jury instructions.
One of the jurors, Fanny Fitzpatrick, testified that they (the jurors) discussed the appropriate crime for which they could convict the appellant. Ms. Fitzpatrick, however, testified that one of the jurors, whose name she did not know, told the other jurors that they could not convict the appellant for that crime, based on what she had read in the book.
In Ex parte Lasley, 505 So.2d 1263 (Ala. 1987), three of the jurors conducted home experiments, and one of the jurors consulted law books before the jury reached a verdict. Justice Almon, writing for the Supreme Court, stated:
 "There is no doubt that the home experiments constituted juror misconduct. The only question is whether the misconduct requires a new trial. The standard for determining whether juror misconduct requires a new trial is set forth in Roan v. State, 225 Ala. 428, 435, 143 So. 454, 460 (1932).
 "'The test of vitiating influence is not that it did influence a member of the jury to act without the evidence, but that it might have unlawfully influenced that juror and others with whom he deliberated, and might have unlawfully influenced its verdict rendered.' (Emphasis added.)
 "The Roan test mandates reversal when juror misconduct might have influenced the verdict. This test casts a 'light burden' on the defendant. Ex parte Troha, 462 So.2d 953 (Ala. 1984).
 "Application of the rule cannot in all cases depend entirely upon the jurors' statements that the extraneous information did not affect their verdict.
 "The integrity of the factfinding process is the heart and soul of our judicial system. Judicial control of the jury's knowledge of the case is fundamental. Our rules of evidence are designed, so far as humanly possible, to produce the truth and to exclude from the jury those facts and objects which tend to prejudice and confuse. Evidence presented must be subject to cross-examination and rebuttal. *Page 675 
The defendant's constitutional rights of confrontation, of cross-examination, and of counsel are at stake.
". . . .
 "Considering three separate home experiments and the consultation of law books by one juror, we conclude that the jury might have been influenced, notwithstanding the jurors' statements to the contrary. The jurors cannot in every case determine the question of whether they were, or might have been, improperly influenced."
Lasley, 505 So.2d at 1263.
In Gilliland v. State, 266 Ala. 24, 93 So.2d 745 (1957), the jurors used the witness room to deliberate. The coroner, a witness in the trial, had inadvertently left a box of evidence in the room. The contents of the box were not admitted into evidence, but the jurors took liberty in inspecting the items anyway.
In Gilliland, 266 Ala. at 25-26, 93 So.2d at 746, the Supreme Court opined:
 "This conduct of the jury was clearly improper. The jury is not permitted to consider extraneous matters, but only that which is introduced into evidence pending trial. Humber v. State, 19 Ala. App. 451, 99 So. 68, certiorari denied, 210 Ala. 559, 99 So. 73; 39 Am.Jur., § 84, p. 97; 23 C.J.S., Criminal Law, § 1369, p. 1038; 67 A.L.R. at page 1531.
 "In reviewing the ruling of the trial court on a motion for a new trial when extraneous matter apart from the trial is brought before the jury, the test is, whether, in our opinion, such matter might have influenced the jury in reaching their verdict. The observation in Oliver v. State, 232 Ala. 5, 10, 166 So. 615, 617, is apposite here:
 " 'It is established that in their deliberation the jury should be separated from and uninfluenced by the outside world. Any misconduct that might influence the jury, affect the verdict rendered or the punishment fixed, is a cause for a new trial. The test of vitiating influence upon a jury authorizing a new trial is not whether it did influence the jury to act without the evidence, but whether it might have unlawfully influenced the jury in the verdict returned, as to its nature, character, or degree, or the amount and extent of the punishment fixed by the jury within the statute.'
 "See also Roan v. State, 225 Ala. 428, 143 So. 454; Williams v. State, 28 Ala. App. 481, 189 So. 81.
 "We entertain the view that the misconduct of the jury was error prejudicial to the defendant."
See also Donley v. City of Mountain Brook, 429 So.2d 603
(Ala.Cr.App. 1982), rev'd on other grounds, 429 So.2d 618 (Ala. 1983) (no proof that jurors examined extraneous materials left in jury room). Cf Dunn v. Syring, 425 So.2d 1081 (Ala. 1983) (it is a violation of Rule 51, A.R.Civ.P., to permit jury to return to jury room with only a written portion of the jury charge).
The testimony of Fanny Fitzpatrick, regarding statements made by an unnamed juror, established that the jury as a wholemight have been influenced as to the verdict which they ultimately reached. Therefore, the appellant has met his "light burden" and is entitled to a new trial.
For the error shown, the judgment of the trial court is thus due to be reversed and the cause remanded for a new trial.
REVERSED AND REMANDED.
All the Judges concur.