The appellant, Robert McCray, was convicted of kidnapping in the second degree, a violation of § 13A-6-44, Code of Alabama 1975, and of assault in the second degree, a violation of §13A-6-21, Code of Alabama 1975. He was sentenced as a habitual offender to 25 years for the kidnapping conviction and to 10 years for the assault conviction.
The state's evidence tended to show that the appellant and his friend, Boisie Minor, kidnapped the appellant's wife, Deloris McCray, on May 18, 1988. Deloris McCray was leaving the appellant and was packing dishes in the kitchen when Minor placed an ammonia-soaked rag over her face. Minor then carried her to a bedroom where he tied her arms together and her legs together, while the appellant told her that he was going to kill her. Minor then gagged her with a rag ripped from a pillowcase. Minor carried Mrs. McCray outside and put her in the trunk of her car. The appellant threw the ammonia-soaked rag into the trunk with *Page 612 
her and closed the trunk lid. The car then "took off at a fast speed."
Mrs. McCray was able to free the bindings on her hands and then was able to untie her feet and to take the gag out of her mouth. She then managed to open the trunk from the inside. When the car slowed down, she jumped out of the car and ran.
Minor saw her jump out of the car, chased her, and caught her. He then began choking her with his hands and Mrs. McCray passed out. After she regained consciousness, the appellant told Minor to put her in the trunk of his car. They took her to an abandoned house.
At the house, Minor looped adhesive tape around her neck twice while she was on her knees and then lifted her up by the tape. Mrs. McCray passed out again. When she regained consciousness, she went outside the house and found that the appellant was still there. He apologized for what he had done.
The appellant was convicted of kidnapping in the second degree and of assault in the second degree in his first trial. On appeal, his convictions were reversed and his case remanded for a second trial. McCray v. State, 565 So.2d 673
(Ala.Cr.App. 1990). The current appeal is from the appellant's second convictions. The appellant presents three issues for review.
 I
The appellant contends that his sentence is violative of his constitutional right to due process because the sentence he received in his second trial was greater than that he received in the first trial. After the appellant's first trial, Judge Dale Segrest sentenced him to 15 years for the conviction for kidnapping in the second degree and 10 years for the conviction for assault in the second degree. These sentences were ordered to be served concurrently. This court reversed those convictions and ordered a new trial. McCray, supra. After the appellant's second trial, Judge Howard Bryan sentenced him to consecutive sentences of 25 years' imprisonment for the kidnapping conviction and 10 years' imprisonment for the assault conviction.
The appellant contends that the United States Supreme Court's decision in North Carolina v. Pearce, 395 U.S. 711,89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), prohibits the imposition of a more severe sentence upon retrial of a case unless the sentencing judge states the reasons for the greater sentence. The Pearce
court stated:
 "Due process of law, then, requires that vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives after a new trial. And since the fear of such vindictiveness may unconstitutionally deter a defendant's exercise of the right to appeal or collaterally attack his first conviction, due process also requires that a defendant be freed of apprehension of such a retaliatory motivation on the part of the sentencing judge.
 "In order to assure the absence of such a motivation, we have concluded that whenever a judge imposes a more severe sentence upon a defendant after a new trial, the reasons for his doing so must affirmatively appear."
395 U.S. at 725-26, 89 S.Ct. at 2080.
If we were to look solely at Pearce, we would be compelled to remand this case. However, we must also consider decisions of the court since Pearce.
In Alabama v. Smith, 490 U.S. 794, 799, 109 S.Ct. 2201, 2204,104 L.Ed.2d 865, 872 (1989), the United Supreme Court stated:
 "While the Pearce opinion appeared on its face to announce a rule of sweeping dimension, our subsequent cases have made clear that its presumption of vindictiveness 'do[es] not apply in every case where a convicted defendant receives a higher sentence on retrial.' Texas v. McCullough, 475 U.S. [134], at 138, 106 S.Ct. [976], at 979 [89 L.Ed.2d 104 (1986)]. As we explained in Texas v. McCullough, 'the evil the [Pearce] Court sought to prevent' was not the imposition of 'enlarged sentences after a new trial' but 'vindictiveness of a sentencing judge.' "
There is no indication in this case that the appellant's sentence in the second trial was the result of the judge's vindictiveness, particularly *Page 613 
in view of the fact that the judge presiding over the second trial was not the same judge who imposed the first sentence. The United States Supreme Court in Texas v. McCullough,475 U.S. 134, 106 S.Ct. 976, 89 L.Ed.2d 104 (1986), stated that the presumption of vindictiveness as defined in Pearce did not apply in that case because there were two different sentencers involved in the case. The United States Supreme Court stated:
 "In Colten v. Kentucky, [407 U.S. 104, 92 S.Ct. 1953, 32 L.Ed.2d 584 (1972)], which bears directly on this case, we recognized that when different sentencers are involved,
 " '[i]t may often be that the [second sentencer] will impose a punishment more severe than that received from the [first]. But it no more follows that such a sentence is a vindictive penalty for seeking a [new] trial than that the [first sentencer] imposed a lenient penalty.' Id., 407 U.S., at 117, 92 S.Ct., at 1960."
McCullough, 475 U.S. at 140, 106 S.Ct. at 979-80.
The appellant's sentence does not violate his right to due process. The sentences imposed as enhanced by the Habitual Felony Offender Act, § 13A-5-9, Code of Alabama 1975, are within the statutory range.
 II
The appellant also argues that his sentence should be set aside because he did not receive reasonable notice of the state's intent to use his prior convictions to enhance his sentence under the Habitual Felony Offender Act. Specifically, the appellant contends that he did not receive reasonable notice because he did not receive written notice. At the sentencing hearing, the appellant's counsel stated:
 "I would not represent to the Court that I was not aware of some of these — the D.A.'s office has verbally told me of some of these. But I have not received any written notice, Your Honor."
The Supreme Court of Alabama in Connolly v. State,602 So.2d 452 (Ala. 1992), held that oral notice of intent to invoke the Habitual Felony Offender Act was sufficient and that written notice was not necessary. Here, not all of the appellant's prior convictions were used against him; only one prior conviction was used for enhancement. The state met the notice requirement; thus the appellant's sentence is not due to be set aside.
 III
The appellant argues that the circuit court erred in denying his motion for a judgment of acquittal as to the charge of assault in the second degree. The appellant was indicted for attempted murder, but the jury was instructed only on the following offense of assault in the second degree.
Section 13A-6-21, Code of Alabama 1975, provides, in pertinent part:
 "(a) A person commits the crime of assault in the second degree if:
 "(1) With intent to cause serious physical injury to another person, he causes serious physical injury to any person; or
 "(2) With intent to cause physical injury to another person, he causes physical injury to any person by means of a deadly weapon or a dangerous instrument. . . ."
Subsection (1) of the statute requires that the victim have a "serious physical injury." Section 13A-1-2(9), Code of Alabama 1975, defines a "serious physical injury" as follows:
 "Physical injury which creates a substantial risk of death, or which causes serious and protracted disfigurement, protracted impairment of health or protracted loss or impairment of the function of any bodily organ."
The evidence tended to show that the victim's injuries were bloodshot eyes, a swollen neck, and scratches. Although the victim had been through a terrible experience, there was no evidence that her injuries were of the type to be considered "serious physical injuries" as defined by statute. Vo v. State,612 So.2d 1323 (Ala.Cr.App. 1992). There is no doubt, however, that she received a "physical injury," which is defined as "impairment of physical condition or substantial pain." §13A-1-2(8). *Page 614 
If the jury could have found that the victim's injuries were caused by a deadly weapon or a dangerous instrument, there was sufficient evidence for the conviction of assault in the second degree under subsection (2) of the statute. A "dangerous instrument" is defined as:
 "Any instrument, article or substance which, under the circumstances in which it is used, attempted to be used or threatened to be used, is highly capable of causing death or serious physical injury. . . ."
§ 13A-1-2(12). A "deadly weapon" is "anything manifestly designed, made or adapted for the purposes of inflicting death or serious physical injury. . . ." § 13A-1-2(11).
The evidence tended to show that the appellant's accomplice, along with the appellant or at the appellant's direction, held an ammonia-soaked rag over the victim's face, bound and gagged the victim, locked her in the trunk of a car, drove her to an abandoned house, and choked her with his hands. In addition, the accomplice wrapped adhesive tape around the victim's neck and lifted her up by it in an apparent attempt to "hang" her.
In determining whether an item is a dangerous instrument or a deadly weapon, it is necessary to consider the manner in which it was used. Austin v. State, 555 So.2d 324
(Ala.Cr.App. 1989). In Austin, the court found that a two-by-four piece of lumber was a dangerous instrument when it was used to hit someone in the head and body. Similarly, inDavis v. State, 470 So.2d 1340 (Ala.Cr.App. 1985), a tree limb was considered a dangerous instrument when it was used to strike someone. The Davis court, citing Helton v. State,372 So.2d 390 (Ala.Cr.App. 1979), also noted that shoes may be deadly weapons if they are used in a particular manner in particular situations.
Although adhesive tape would not ordinarily be considered a "dangerous instrument," it was "highly capable of causing death or serious physical injury" in the manner in which it was used by the accomplice, as if it had been a rope. The tape also comes within the definition of a "deadly weapon" in that it was "adapted for the purposes of inflicting death or serious physical injury."
Furthermore, "Alabama follows the view that fists may constitute deadly weapons or dangerous instruments, depending upon the circumstances and manner of their use." Brock v.State, 555 So.2d 285, 287 (Ala.Cr.App. 1989). Likewise, hands can be deadly weapons or dangerous instruments when they are used to choke someone, as here.
There was sufficient evidence for the jury to find the appellant guilty of assault in the second degree. There was evidence that the victim suffered physical injury and that the appellant intended to injure the victim. The jury could also find from the evidence that the use of adhesive tape to "hang" the victim and the use of hands to choke the victim were situations and circumstances where the tape and the hands became dangerous instruments or deadly weapons.
The circuit court did not err in denying the appellant's motion for a judgment of acquittal.
For the reasons set forth above, the judgment in this case is due to be, and it is hereby, affirmed.
AFFIRMED.
All the Judges concur.