WELCH, Judge,
dissenting.
Thomas Addies Thomas was convicted of attempted murder, violations of §§ 13A-4-2 and 13A-6-2, Ala.Code 1975; of second-degree domestic violence, a violation of § 13A-6-131, Ala.Code 1975; and of domestic violence based on strangulation, a violation of § 13A-6-138, Ala. Code 1975. He was sentenced to 25 years’ imprisonment for the attempted-murder conviction, 10 years’ imprisonment for the second-degree-domestic-violence conviction, and 10 years’ imprisonment for the domestic-violence-based-on-strangulation conviction; the sentences were to run concurrently.
Thomas’s only issue on appeal is his contention that his convictions for both second-degree domestic violence and domestic violence based on strangulation constitute a violation of the prohibition against double jeopardy, and, thus, he asserts that one of the convictions and its sentence must be set aside. Thomas asserts that “both offenses were based on the same statutory elements as the other and the same facts and allegations in each count of *1218 the indictment.” (Thomas’s brief, at p. 8.) Thomas contends that the standard for appellate review is whether one of these two offenses is a lesser-included offense to the other. See Crayton v. State, 949 So.2d 976, 978 (Ala.Crim.App.2006)(a challenge to convictions for a greater and lesser offense “implicates the jurisdiction of the trial court”). This contention was not presented to the trial court, but has been presented for the first time on appeal as a jurisdictional defect.
The unpublished memorandum in Thomas v. State, [No. CR-13-0812, August 14, 2015] — So.3d - (Ala.Crim.App.2015), affirming Thomas’s convictions finds that “there were facts before the jury that allowed the jury to find that Thomas was guilty of second-degree domestic violence (Count 2) based on conduct different from that presented establishing domestic violence by strangulation (Count 3).” Specifically, the memorandum concludes that there were three separate offenses, i.e., three assaults, and therefore, a double jeopardy- violation is not implicated. The unpublished memorandum explains the existence of three separate assaults as follows:
“To establish second-degree domestic violence the State had to prove that Thomas intentionally inflicted physical injury by means of a deadly weapon or dangerous instrument—here, a belt. The physical injury caused by use of a belt did not have to be strangulation or suffocation as both Thomas and the State seem to assert. The indictment did not limit, nor did the trial court’s jury instructions limit second-degree domestic violence to an incident of strangulation. Thomas struck Charleen on the buttocks 20 or 30 times with a belt. The State’s exhibits 34 and 35 are photographs admitted into evidence depicting the bruises and abrasions to Charleen’s buttocks caused by the blows Thomas delivered with his belt. This is sufficient evidence to establish the impairment of physical condition, i.e., physical injury, necessary to convict for second degree domestic violence....
“It was an element of second-degree domestic violence, as charged in Thomas’s indictment, that a belt constitute a dangerous instrument. Under the facts of this case, this Court cannot say as a matter of law that the belt used to strike Charleen’s buttocks was per se a dangerous instrument; that was an issue of fact for the jury to determine based on all the evidence in the case. See Sharpe v. State, 340 So.2d 885, 888 (Ala.Crim.App.1976) (where the appellant was charged with assault and battery, the appellate Court could not conclude as matter of law that use of a chair to .strike a police officer across his back \yas per se a deadly instrument; however,-the Court opined .that ‘this issue is a matter of. fact for the jury to determine under all the evidence in this case.’); McCray v. State, 643 So,2d 610 (Ala.Crim.App.1992) (defendant charged with second-degree assault had his motion for judgment of acquittal properly denied because the evidence presented allowed the jury to find that adhesive tape was used in a manner transforming it into a deadly weapon or dangerous instrument); Helton v. State, 372 So.2d 390, 393 (Ala.Crim.App.1979) (‘Thus we cannot state, as a matter of law, that kicking with a shoe-clad foot may not constitute assault with a deadly weapon. While feet or shoes are not deadly weapons per se, the manner of them use in particular situations may make them deadly weapons,’). Here, preceding the incident in which Thomas did strangle Charleen with his belt, Thomas beat Charleen to the point that it appeared to be an attempt to severely injure or kill Charleen. Thomas first told Charleen that he was going to kill her. He then *1219 struck her numerous times in the head with his fist, with a cellular telephone, and with his own head until she lost consciousness. The jury could have found that Thomas’s striking Charleen on the buttocks 20 to 30 times with a belt was a continuation of his attempts to injure.or kill Charleen. Thus, there was evidence allowing the jury to find that the belt was used in the manner of a dangerous instrument ‘highly capable of causing death or serious physical injury.’
“The jury could have found domestic violence by strangulation or suffocation (Count 3) based on two factual scenarios that are unrelated to the spanking incident discussed above. First, there was evidence, before the jury establishing that Thomas strangled Charleen with a belt with the intent to cause physical harm. There was also evidence before the jury that Thomas intended to cause Charleen physical harm by obstructing her airway by sticking his fist into her mouth and causing her to suffocate. See, § 13A-6-138(a), Ala.Code 1975.
“Therefore, based on all the evidence before the jury, it is possible that the jury could have found Thomas guilty of second-degree domestic violence based on evidence regarding a strangulation with a belt or based on a spanking with a belt. The jury could have found Thomas guilty of domestic violence by strangulation based on evidence of a strangulation with a belt or based on an attempt to suffocate by placing his fist in her mouth. A double jeopardy concern would exist only if the jury found second-degree domestic violence and. domestic violence by strangulation based on the strangulation with a belt. However, the jury’s findings are unknown. Viewing all the evidence, it is clear that the jury had before it evidence supporting its verdicts, this Court will not go behind that verdict.”
I respectfully dissent from the unpublished memorandum affirming. Thomas’s conviction for domestic violence by strangulation. Because I believe that conviction violates the ' prohibition against double jeopardy, I would reverse that conviction and render a judgment for Thomas.
A single indictment was returned against Thomas charging the following:

“Count I

“Thomas [Addies] Thomas, did, with the intent to commit the crime of Murder (Section 13A-6-2 of the Code of- Alabama), commit said offense by attempting to intentionally cause the death of another person, Charleen Mickle Thomas, by choking her with a belt, in violation of Section 13A-4-2 of the Code of Alabama ...

“Count II

“Thomas [Addies] Thomas, did with intent to cause physical injury to another person, cause physical injury to another person to-wit: Charleen Mickle Thomas, by means of a deadly weapon or. a dangerous instrument, to-wit: a belt, in violation of 13A-6-21 of the Code of Alabama and the victim, Charleen Mickle Thomas is a current or former spouse ... to-wit: a spouse, in violation of-Section 13A-6-1S1 of the Code of Alabama. ...

“Count III

“Thomas [Addies] Thomas, did with intent to cause physical harm by strangulation or suffocation or attempted strangulation or suffocation to another person, to-wit: Charleen Mickle Thomas, and the victim, Charleen Mickle Thomas, is a spouse ... in violation of 13A-6-138 of the. Code of Alabama .... ”
*1220 This Court states in its unpublished memorandum:
“Facts
“Thomas Addies Thomas and the victim, 53-year-old Charleen Thomas, were married in 2009. Due to Thomas’s alcoholism and ‘major drug problem,’ the couple had been separated for more than a year before the May 5, 2013, incident underlying the current charges. (R. 150.) On May 4, 2013, Thomas departed the ‘men’s home’ in Columbus, Georgia, where he was living and he arrived at Charleen’s home at some point in the evening. There, he was provided a guest room in which to stay.[1]
“At some point shortly after 9:00 p.m. on May 5, 2013, Thomas entered Char-leen’s bedroom and requested to have sex with her. Charleen declined Thomas’s request. As Thomas was leaving Charleen’s bedroom he stated, ‘This is gonna hurt you more than it does me.’ (R. 160.) Charleen said that he appeared to be sober when he left her bedroom. In five minutes Thomas returned to Charleen’s bedroom angry, screaming, and cursing at her. He jumped on top of Charleen, who was still lying on her bed, and pinned her down with his knees. He told her, ‘You’ve done it now, bitch. You’re gonna die.’ (R. 162.) Thomas spit in Charleen’s face and pulled her hair. At this point Char-leen stated that she did smell alcohol on Thomas’s breath. He began hitting the back of Charleen’s head with his fist. He told Charleen that she ‘was going to die tonight, and so was he.’ (R. 164.) He picked up a hammer that was under Charleen’s nightstand and tried to force her to hit him with the hammer. She explained that he wanted her fingerprints on the hammer and he wanted ‘it’ to look like self-defense. However, when Charleen resisted his attempt to force her to hit him with the hammer, he put the hammer down and abandoned that idea. Thomas began to hit and kick Charleen and to ‘head butt [her] with his head against [her] head.’ (R. 164.) She said she was in ‘horrible pain.’ (R. 164.) She pleaded with him to stop. She stated that ‘he must have hit [her] a hundred times or so’ over the course of an hour while saying bad things to her and telling her that he intended to kill her. At some point, a head butt caused her to lose consciousness. When she woke up, she was on the bedroom floor. When Thomas saw that Charleen was awake, he grabbed her, pulled her pajama bottoms off, pulled his belt off, leaned Char-leen over the bed, and spanked her bottom with the belt as if she were a child. Charleen guessed Thomas struck her 20 or 30 times with the belt. Thomas took Charleen’s cellular phone from her bedside nightstand and used it to beat Charleen in the head. She fought her way into the den where Thomas pushed her to the floor. Thomas repeatedly punched Charleen in her ribs and stomach. He placed his belt around her neck and pulled it tight. Charleen testified that she was ‘gagging. [She was] trying to struggle. Nothing was working. [She was] urinating on [her]self.’ (R. 170.) Charleen struggled against the belt until she pulled it from her neck and threw it across the room. Thomas retrieved the belt, slipped the belt through its buckle to make a loop, placed the loop around Charleen’s neck, and pulled it tight. He was telling her, You deserve this, you know. You’ve turned my family against me, Miss Goody Two-Shoes.’ (R. 172.) Thomas pulled on the belt ‘real hard’ at least three times. (R. 172.) Charleen could not breath, and then Thomas stuck his fist in her mouth and his fingers down her throat and she began to gag. At some point Thomas pulled so forcefully on the belt that he lifted Charleen’s entire body off the floor. She lost con *1221 sciousness. When she awoke, Thomas ordered her to go to her bedroom and get into bed. She was unable to walk, so she had to crawl to her bedroom. Thomas was screaming at her from the kitchen. Charleen believed Thomas was in the kitchen trying to open a bottle of wine.[2] Charleen, who was naked[3] at this point, gathered herself and went into the bathroom connected to her bedroom, opened the bathroom window, and jumped out of the window to the ground approximately 10 to 14 feet below. She was able to walk to a neighbor’s house, who summoned the police and an ambulance. Charleen was taken by ambulance to a hospital emergency room. She was treated in the emergency room but not admitted to the hospital.
“Doctor Joseph Monley treated Char-leen in the emergency room. He testified that a belt like the one allegedly used to choke Charleen, could, if wrapped around someone’s neck and pulled tight enough, decrease the person’s oxygen enough to cause death.
“Numerous photographs were admitted into evidence depicting Charleen’s injuries.
[[Image here]]
I disagree with the assertion that the jury could have found that the belt, when used to strike Charleen’s buttocks, was transformed into a dangerous instrument capable of causing death or serious physical injury.
Section 13A-l-2(5), Ala.Code 1975, defines “dangerous instrument” as: “Any instrument, article, or substance which, under the circumstances in which it is used, attempted to be used, or threatened to be used, Is highly capable of causing death or serious physical injury....” Section 13A-1-2(14), Ala.Code 1975, defines “serious physical injury” as: “Physical injury which creates a substantial risk of death, or which causes serious and protracted disfigurement, protracted impairment of health, or protracted loss or impairment of the function of any bodily organ.” The commentary to § 13A-1-2, Ala.Code 1975, states:
“Many objects are not deadly per se and ordinarily have lawful functions and uses, but under subdivision ([15]) such object may constitute a ‘dangerous instrument’ because it was used, or attempted to be used, in a manner rendering it ‘readily capable of causing death or serious physical injury.’ (A stick, rock, pencil or pen is capable of producing great harm or even death if jammed in a person’s eye, ear or throat.) This definition essentially states previously existing law,... An instrument or weapon used in inflicting injury may or may not be esteemed deadly, according to the manner of its use, and the subject on which it is used. Sylvester v. State, 72 Ala. 201 (1882). In other words, a deadly weapon is not only a weapon with which death may be easily and readily produced, but one which is likely to produce death or great bodily harm from the manner in which it is used. Williams v. State, 251 Ala. 397, 39 So.2d 37 (1948).”
§ 13A-1-2, Ala.Code 1975, Commentary.[2]
Pursuant to the offense charged and the charge given to the jury, the physical inju *1222 ry required for second-degree assault had to be inflicted by use of a dangerous instrument, which by statutory definition must be an object used in such a manner that it is “highly capable of causing death or serious physical injury.” § 13A-l-2(5), Ala. Code 1975. Therefore, even if the blows from the belt to Charleen’s buttocks caused physical injury, the belt must have been used in a manner rendering it “highly capable of causing death or serious physical injury.” § 13A-l-2(5), Ala; Code 1975. I do not believe that the belt, when used to strike Charleen’s buttocks, was “highly capable of causing death or serious physical injury.” § 13A-l-2(5), Ala. Code 1975. Therefore, because I'do not believe that the State proved that a dangerous instrument was used to strike Charleen’s buttocks, I do not believe that the State proved that that incident was a second-degree assault and, thus, did not prove that that incident was second-degree domestic violence. Therefore, unlike those who joined the unpublished memorandum, I do not believe that striking Charleen’s buttocks was a separate incident of second-degree assault upon which the jury' could find Thomas guilty of second-degree domestic violence.
Next, I disagree with the finding in the unpublished memorandum that Thomas’s placing his fist in Charleen’s mouth while he was strangling her with a belt constituted a separate incident of assault. She stated that as Thomas pulled the belt tighter around her neck she “[could] not breathe.” (R. 172.) Charleen stated that as Thomas was strangling her with the belt, he stuck his fist into her mouth and his Angers down her throat causing her to gag. Therefore, I believe that the “belt” and “fist” were part of the same attempt to strangle Charleen and not separate incidents. ■
Moreover, the record discloses that the State’s' theory of prosecution was that Thomas’s choking Charleen with the belt constituted three charged crimes. Nowhere in the record did the State argue that the “spanking” or the “fist” incidents were the incidents underlying any charge.
. I believe that there was one incident of strangulation, inflicted by use of a belt, upon which Thomas’s convictions for second-degree domestic violence and domestic violence by strangulation were based. And for the reasons that follow, I believe that the prohibition against double jeopardy has been violated because I believe that, under the facts of this case, second-degree domestic violence and domestic violence by strangulation are the same offense. Therefore, I believe that Thomas’s conviction for domestic violence by strangulation must be reversed and a judgment of acquittal rendered for him.
‘“Blockburger [v. United States, 284 U.S. 299 (1932),] provides that “where the samé act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.” ’ ” State v. Esco, 911 So.2d 48, 49 (Ala.Crim.App.2005) (quoting Blockburger v. United States, 284 U.S. at 304 (emphasis added)). As discussed below, domestic violence by strangulation requires proof of the same facts and elements as second-degree domestic violence except that second-degree domestic violence requires proof of one additional fact or element not required for domestic violence by strangulation—the use of a dangerous instrument.
*1223 Second-degree domestic violence is defined, in relevant part, as follows:
“(a) A person commits the crime of domestic violence in the second degree if the person commits the crime of assault in the second degree pursuant to Section 13A-6-21 ... and the victim is a current or former spouse, parent, child, any person with whom the defendant has a child in common, a present or former household member, or a person who has or had a dating or engagement relationship with the defendant....”
§ 13A-6-131(a) Ala.Code 1975.[3] '
The relevant section of § 13A-6-21, Ala. Code 1975, defines second-degree assault as follows:
“(a) A person commits the crime of assault in the second degree if the person does any of the following:
[[Image here]]
“(2) With intent to cause physical injury to another person, he or she causes physical injury to any person by means of a deadly weapon or a dangerous instrument,...”
“Physical injury” is defined as “impairment of physical condition or substantial pain.” § 13A-l-2(8), AJa.Code 1975.
“A ‘dangerous instrument’ is defined as:
“ ‘Any instrument, article or, substance which, under the circumstances in which it is used, attempted to be used or threatened to be used, is highly capable of causing death or serious physical injury....’
“ § 13A-1-2(12)[, Ala.Code 1975].”
McCray v. State, 643 So.2d 610, 614 (Ala.Crim.App.1992). Here, testimony was presented from which the jury could find that a belt constitutes a dangerous .instrument when fashioned into a noose and used to strangle a person.
Based on the definition above, second-degree domestic violence is the commission of second-degree assault against a current or former spouse. The second-degree-assault statute provides various ways, in which a second-degree assault may occur. See § 13A-6-21, Ala.Code 1975.[4] These *1224 variations in turn create variations in the facts or elements necessary to prove second-degree domestic violence. As the offense is charged against Thomas, the necessary facts constituting the elements of second-degree domestic violence, are 1) an intentional 2) assault of any kind 3) causing physical injury, 4) committed with a deadly weapon or a dangerous instrument, 5) to a current or former spouse.
Domestic violence by strangulation is defined in § 13A-6-138, Ala.Code 1975,[5] as:
“(b) A person commits the crime of domestic violence by strangulation or suffocation if the person commits an assault with intent to cause physical harm ... by strangulation or suffocation or attempted strangulation or suffocation against a person with whom the defendant has a qualified relationship.”
A qualified relationship[6] includes a spouse or former spouse. See § 13A-6-138(a), Ala.Code 1975.
Thus, the elements of domestic violence by strangulation are: 1) an intentional 2) assault committed by strangulation or suffocation, or attempt to assault by strangulation or suffocation, 3) that causes or attempts to cause physical harm, 4) to a spouse or former spouse.
Both offenses in this case are assaults against a spouse. Both offenses require some degree of physical harm. “Physical harm” necessary for domestic violence by strangulation is not defined by statute, but it is a broad term that includes any measure of physical harm, whether slight of serious. Thus, a “physical injury,” defined by statute and necessary to prove second-degree domestic violence, is included within the scope of “physical harm” and, thus, a “physical injury” may serve as the fact establishing both “physical injury” necessary to prove second-degree domestic violence and “physical harm” necessary to prove domestic violence by strangulation.
Domestic violence by strangulation requires that the method of assault be a strangulation, whereas any conduct that falls within a definition of second-degree assault may constitute second-degree domestic violence. See § 13A-6-21, Ala. Code 1975. Thus, when as here, an assault is accomplished by a strangulation, the strangulation may serve as the fact establishing the assault necessary for both second-degree domestic violence and domestic violence by strangulation. However, here the second-degree assault is charged under a subsection of assault requiring proof that the assault was accomplished by use of a deadly weapon or dangerous instrument. In that scenario, as here, use of a dangerous instrument is an additional fact or element necessary to *1225 prove second-degree assault and, in turn, to prove second-degree domestic violence.
In this case, both offenses were based on the exact same conduct. In this case, it was impossible for Thomas to commit second-degree domestic violence without also committing domestic violence by strangulation. When Thomas strangled Charleen, causing her physical harm, he committed the crime of domestic violence by strangulation. As to domestic violence by strangulation, all that was necessary regarding the assault was a strangulation; that a belt was used to accomplish the strangulation or whether the belt was or was not considered a dangerous instrument was irrelevant. Nevertheless, testimony was presented establishing that the belt, as it was used in this case to strangle Charleen, was a dangerous instrument, thus establishing the additional and necessary element for the crime of second-degree domestic violence.
“‘“To be necessarily included in the greater offense, the lesser must be such that it is impossible to commit the greater without first having committed the lesser.” ’ ”
Ex parte N.W., 748 So.2d 190, 192 (Ala.1999) (quoting Chambers v. City of Opelika, 698 So.2d 792, 794 (Ala.Crim.App.1996), quoting in turn Sharpe v. State, 340 So.2d 885, 887 (Ala.Crim.App.), cert. denied, 340 So.2d 889 (Ala.1976) (emphasis added in Chambers omitted)).
“ ‘Section 13A-l-9(a)(l), Code of Alabama 1975, defines a “lesser included offense” as one that “is established by proof of the same or fewer than all the facts required to establish the commission of the offense charged.” Further, “a lesser offense is necessarily included in the elements of the greater offense and therefore it would be impossible to commit a greater offense without committing the included offense.” ’ ”
Owens v. State, 683 So.2d 31, 33 (Ala.Crim.App.1996) (quoting Vinson v. State, 601 So.2d 196, 198 (Ala.Crim.App.1992), quoting in turn C.P. v. State, 597 So.2d 246, 247 (Ala.Crim.App.1992)).
In this case, both offenses were based on the same conduct and both required proof of the same facts—intent, assault, physical injury, spousal victim—but for the additional fact necessary for second-degree domestic violence of the use of a dangerous instrument. Thus, in this case, when Thomas committed second-degree domestic violence he also committed domestic violence by strangulation.
Therefore, in this case, I believe that domestic violence by strangulation is a lesser-included offense of second-degree domestic violence. Because Thomas was convicted of both a greater offense and a lesser offense included within the greater offense, his convictions for both offenses violate double-jeopardy principles. Therefore, I would remand this cause to the circuit court with directions for the circuit court to vacate Thomas’s conviction and sentence for domestic violence by strangulation.

"1 It was not disclosed during trial, but during the sentencing hearing Charleen stated that she had allowed Thomas to stay in her home so he could attend his daughter’s graduation from pharmacy school.

“2 A police office saw an open bottle of wine in the kitchen.

"3 Testimony from Charleen's neighbor was that Charleen arrived at the neighbor’s house wearing only a pajama top, but no bottoms.”

. The jury was not charged on the definition of a deadly weapon. It is defined in § 13A-1-2(7), Ala.Code 1975, as: “[a] firearm or anything manifestly designed, made, or adapted for the purposes of inflicting death or serious *1222 physical injury. The term includes, but is not limited to, a pistol, rifle, or shotgun; or a switch-blade knife, gravity knife, stiletto, sword, or dagger; or any billy, black-jack, bludgeon, or metal knuckles."

. "Domestic violence in the second degree is a Class B felony, except the defendant shall serve a minimum term of imprisonment of six months without consideration of probation, parole, good time credits, or any reduction in time for any second or subsequent conviction under this subsection.” § 13A-6-131(a), Ala. Code 1975.

, “(a) A person commits the crime of assault in the second degree if the person does any of the following:
"(1) With intent to cause serious physical injury to another person, he or she causes serious physical injury to any person.
"(2) With intent to cause physical injury to another person, he or she causes physical injury to any person by means of a deadly weapon or a dangerous instrument.
“(3) He or she recklessly causes serious physical injury to another person by means of a deadly weapon or a dangerous instrument.
"(4) With intent to prevent a peace officer, as defined in Section 36-21-60, a detention or correctional officer at any municipal or county jail or state penitentiary, emergency medical personnel, a utility worker, or a firefighter from performing a lawful duty, he or she intends to cause physical injury and he or she causes physical injury to any person....
"(5) With intent to cause physical injury to a teacher or to an employee of a public educational institution during or as a result of the performance of his or her duty, he or she causes physical injury to any person.
"(6) With intent to cause physical injury to a health care worker ... he or she causes physical injury to any person.
"(7) For a purpose other than lawful medical or therapeutic treatment, he or she intentionally causes stupor, unconsciousness, or other physical or mental impairment or injury to another person by administering to him or her, without his or her consent, a drug, substance or preparation capable of producing the intended harm,”
§ 13A-6-21, Ala,Code 1975,

. "Domestic violence by strangulation or suffocation is a Class B felony punishable as provided by law.” § 13A-6-138(c), Ala.Code 1975.

. "(a) For the purposes of this section, the following terms have the following meanings:
"(1) Qualified relationship. The victim is a spouse, former spouse, parent, stepparent, child, stepchild, or a person with whom the defendant has a child in common, or with whom the defendant has or had a dating or engagement relationship within 10 months preceding this event
"(2) Strangulation. Intentionally causing asphyxia by closure or compression of the blood vessels or air passages of the neck as a result of external pressure on the neck.
"(3) Suffocation. Intentionally causing asphyxia by depriving a person of air or by preventing a person from breathing through the inhalation of toxic gases or by blocking or obstructing the airway of a person, by any means other than by strangulation as defined in this section.”
§ 13A-6-138(a), Ala.Code 1975.